## TODD DRY DOCK & CONSTRUCTION CORPORATION v. SUMNER IRON WORKS.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1923.)

No. 3951.

1. **United States ⬦⇒72—President's authority under Defense Act to cancel contracts extends to subcontracts for ships and material.**

The provision of Act June 15, 1917, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115$^1/_{16}$d), authorizing the President "to modify, suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or material," is without limitation, and applies to contracts made by the government or its agents for ships or material, and extends, not only to the principal contract, but to all subcontracts for material and labor, performance of which would impose further obligation on the government.

2. **United States ⬦⇒72—Anticipated profits not recoverable on cancellation of government shipbuilding contract.**

The statutory authority of the President to cancel any contract made by the government for ships or material, under Act June 15, 1917, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115$^1/_{16}$d), was read into every contract, and was notice to, and binding on, all contractors and subcontractors, and precludes recovery of anticipated profits from any contract or subcontract so canceled.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action at law by the Sumner Iron Works against the Todd Dry Dock & Construction Corporation. Judgment for plaintiff, and defendant brings error. Reversed.

Thos. P. Revelle, U. S. Atty., John A. Frater, Asst. U. S. Atty., Bogle, Merritt & Bogle, all of Seattle, Wash., MacCormac Snow, of Portland, Or., for plaintiff in error.

Cooley, Horan & Mulvihill, of Everett, Wash., for defendant in error.

Before GILBERT and RUDKIN, Circuit Judges, and WOLVERTON, District Judge.

RUDKIN, Circuit Judge. The Urgency Deficiencies Appropriation Act of June 15, 1917 (40 Stat. 182 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115$^1/_{16}$d]), provides, in part, as follows:

"The President is hereby authorized and empowered, within the limits of the amounts herein authorized—

"(a) To place an order with any person for such ships or material as the necessities of the government, to be determined by the President, may

require during the period of the war and which are of the nature, kind and quantity usually produced or capable of being produced by such person.

"(b) To modify, suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or material.

* * *

"Whenever the United States shall cancel, modify, suspend, or requisition any contract, * * * in accordance with the provisions hereof, it shall make just compensation therefor, to be determined by the President; and if the amount thereof, so determined by the President, is unsatisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation therefor, in the manner provided for by section twenty-four, paragraph twenty, and section one hundred and forty-five of the Judicial Code.

"The President may exercise the power and authority hereby vested in him, and expend the money herein and hereafter appropriated through such agency or agencies as he shall determine from time to time. * * *

"The word 'material' shall include stores, supplies, and equipment for ships, and everything required for or in connection with the production thereof."

The power and authority thus vested in the President was delegated by him from time to time to the United States Shipping Board Emergency Fleet Corporation. On August 31, 1918, the Fleet Corporation entered into a contract with the Todd Dry Dock & Construction Company for the construction of 24 steel vessels on the usual cost plus basis; the Fleet Corporation agreeing to advance funds to defray the expenses of construction as they arose. The Todd Corporation then entered into a contract with the Sumner Iron Works to furnish the winches for the 24 vessels at a price agreed upon between the parties. Twelve of the vessels have been fully constructed, and no question concerning these is involved in the present suit. On January 25, 1919, the Fleet Corporation suspended all work on the last 12 hulls called for by the contract of August 31st, and directed the Todd Corporation to send similar suspension notices to all material, equipment, and other subcontractors for the vessels. On October 21, 1919, the Fleet Corporation canceled the contract of August 31st as to the last 12 hulls, and directed the Todd Corporation to notify all subcontractors affected by the cancellation. Notice of suspension and cancellation was duly given by the Todd Corporation to the Sumner Iron Works.

This action was thereafter instituted by the Sumner Iron Works against the Todd Corporation to recover damages for breach of the winch contract. The case was tried before the court without a jury by written stipulation of the parties. The court found that the plaintiff had expended the sum of $47,040.06 in the partial construction of the 132 winches for the last 12 hulls; that it would have made a profit of $36,997.73 if permitted to fulfil the contract; that it was entitled to interest in the sums of $1,040.97 and $5,002, respectively; that the salvage value of the material on hand was $7,071.83; that it had received a payment of $50,000; and gave judgment for the difference, amounting to the sum of $32,208.94.

It will be observed that the amount of the judgment is less than the anticipated profits allowed by the court, and, if such profits are not

recoverable, the judgment should have been for the defendant. The present writ of error was sued out to procure a reversal of this judgment. The defendant in error contends that this is but the ordinary action for breach of contract. Plaintiff in error, on the other hand, contends that the contract was destroyed by commercial frustration, impossibility of performance, or failure of the mutually contemplated means of performance. In our view, there are but two questions in the case: First, was the contract breached by the plaintiff in error, or simply canceled by competent authority? And, second, if canceled by competent authority, what is the measure of recovery?

[1] The authority conferred upon the President by the Act of June 15, 1917, to cancel any existing or future contract for the building, production, or purchase of ships or material, is without limitations or restrictions. But the defendant in error contends that the provision refers to private contracts only, and does not extend to or include contracts with the government or contracts with the Fleet Corporation. It seems to us, however, that the provision has special reference to contracts of the latter class. The government and the Fleet Corporation were about to enter into contracts calling for the expenditure of vast sums of money. The principal contract in this case alone involved an estimated expenditure of approximately $30,000,000, and this was but one of many similar contracts. Between June 15, 1917, and July 1, 1918, Congress appropriated approximately $3,000,000,000 for the building, production, and purchase of ships, and material. Act June 1917, supra; Act Oct. 6, 1917 (40 Stat. 345); Act July 1, 1918 (40 Stat. 650).

The duration of the war and the necessities of the government were both uncertain, and it was the part of prudence on the part of Congress to provide for the cancellation of all contracts imposing future obligations upon the government as soon as public safety and public necessity would permit. The act should receive a liberal construction to that end, and the construction placed upon it by the department charged with its execution is of great weight. The authority to suspend or cancel extended, in our opinion, not only to the principal contract, but to all subcontracts for material and labor, the performance of which would impose further obligations upon the government.

[2] We are not now directly concerned with the claim of the Todd Corporation against the Fleet Corporation or against the United States; but, if the present judgment is permitted to stand, how can the amount of the judgment be excluded from the just compensation to which the Todd Corporation is entitled as against the government. It is said that the Todd Corporation should have provided against such a contingency by contract, and, had it done so, the contract price would have been much higher. But the reservation of rights conferred by law is wholly unnecessary. The contract was canceled, not by the Todd Corporation, but by the authorized representative of the President of the United States, and the Todd Corporation was under no obligation to warn the defendant in error that that authority might be exercised at any time. The principal contract itself contained no such reservation. Doubtless the Fleet Corporation deemed the authority reserved by law

ample for its protection. That authority is read into every contract, and is notice to all, and is binding upon all.

For these reasons we are satisfied that the contract under which the defendant in error claims has been canceled by competent authority, and that such cancellation precludes a recovery of anticipated profits, which necessarily presuppose the continued existence of the contract. But in any event anticipated profits form no part of just compensation. As said by the Supreme Court in Duesenberg Motors Corp. v. United States, 260 U. S. 115, 43 Sup. Ct. 19, 67 L. Ed. ——, decided November 13, 1922:

"It was the abrupt and unexpected suspension of hostilities and the declaration of an armistice that was the cause of loss to the contractor, and the disappointment of profits from its contract which it was preparing to realize and would have realized. But it took that chance, and has not now a legal claim against the government for reimbursement of its outlays. We need not distinguish between the outlays, nor dwell upon them. They were outlays of the speculation, and subject to sacrifice and loss, with its disappointment."

And again the court said:

"There was no prophecy of the Armistice; its sudden happening terminated the further execution of the contractor's undertaking, preventing, as we have said, the realization of profits. And, we repeat, this chance the contractor took, and must abide the result."

See, also, Meyer Scale & Hardware Co. v. United States, 57 Ct. Cl. 26, decided in the Court of Claims January 9, 1922.

It appearing, therefore, that the defendant in error has been overpaid for all outlays, exclusive of anticipated profits, the judgment must be reversed.

It is so ordered.