### AMERICAN CHAIN CO. v. INTERSTATE IRON & STEEL CO.*

(Circuit Court of Appeals, Seventh Circuit. June 27, 1923.)

No. 3230.

Sales ⬦177—Cancellation of government contract with buyer held not to authorize buyer to cancel contract for materials.

Where a buyer, who contracted to purchase 4,800 tons of round iron bars of standard sizes, had a contract with the government, of which the seller had knowledge, to make anchor chains for troop ships, the cancellation of the government contract for the chains under Act June 15, 1917, and Merchant Marine Act June 5, 1920, did not authorize the buyer to cancel his contract for the bars, since the seller was not a subcontractor, but acted independently, and especially where it appeared that only a small part of the bars previously taken under the contract were of the size required by the government contracts, and that the contract of sale expressly stipulated that it was irrevocable, and not subject to cancellation.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 36, 68 L. Ed. —.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by the Interstate Iron & Steel Company against the American Chain Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Henry M. Ward, of New York City, and Victor Elting, of Chicago, Ill., for plaintiff in error.

Edward R. Johnston, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Plaintiff in error, defendant below, was buyer in a contract of sale made with defendant in error as seller. The subject-matter was 4,800 tons of round iron bars of from 1 to 3 inches in diameter and of such "standard sizes, shapes, and sections as are within seller's regular range of practice." The contract was signed on October 24, 1918, and provided for monthly deliveries on buyer's specifications from January 1 to July 1, 1919. None of the terms seems unusual, unless it is the provision that "this is an irrevocable contract and is not subject to cancellation, suspension of shipments, or to any change in price due to market conditions, except as specifically stated herein." Buyer took and paid for 3,200 tons, and repudiated its obligation to take and pay for the remaining 1,600 tons. Judgment in favor of seller is challenged by this writ of error.

In buyer's stricken pleas (counting the material facts and omitting the legal opinions of the pleader), the only asserted defense was this: On February 16, 1918, the Emergency Fleet Corporation (a wartime agency of the United States) engaged the American Chain Company (buyer in this case) to furnish 140 anchor chains to be used on troop ships. The links were to be 2½ inches in diameter. Buyer's contract for iron bars was made for the purpose of getting the material from which to make the anchor chains, as seller well knew. After buyer had furnished 70 chains, the United States, through its proper agent, in March, 1919, canceled the contract for the remaining 70 chains, and thereupon buyer notified seller that it canceled the contract for the remaining 1600 tons of bars.

Under the Act of June 15, 1917 (40 Stat. 182), relating to wartime powers of the President, and the Merchant Marine Act of June 5, 1920 (41 Stat. 988), which repealed the Act of June 15, 1917, the President through governmental agencies was authorized to cancel contracts for the purchase of ships or ship material, and if the person who was entitled to "just compensation" was not satisfied with the amount fixed by governmental agencies, he was authorized to sue the United States.

But no governmental agency ever entered into any contract with this seller of iron bars, or ever directed or required this buyer so to contract, or ever requisitioned or modified or canceled this contract in suit, or ever directed or required buyer to modify or cancel this contract.

This contract for iron bars, to be delivered during 1919, was signed a few days before the Armistice, at a time when the war correspondents were expressing a common expectation of a speedy smashing of

the German lines. If buyer had desired to condition its obligation upon the contingencies of war, it would have been easy to take up that question with seller. Possibly the question was raised, and seller's response was expressed in the stipulation that the contract should be irrevocable.

Evidence was heard only on the question of damages. But an interesting exhibit (bearing on the merits of buyer's motion to be heard further in defense) appears in the bill of exceptions. Of the 3,200 tons taken by buyer less than 100 tons was of sufficient diameter for the anchor chains called for in buyer's contract with the government. If buyer's specifications for the untaken 1,600 tons had continued at the same ratio, less than 50 tons would have been suitable for the anchor chains. The inference is not a strained one that the bulk of buyer's business was in making chains other than 2½-inch anchor chains.

In the contract, not only was there no stipulation that the iron bars were to be used in making 2½-inch anchor chains for troop ships, and that the material should be of quality and size suitable for that purpose, but buyer took the privilege of specifying any sizes it pleased from 1 to 3 inches, and seller made the condition that the bars were to be within its regular range of practice. Therefore seller, instead of being a subcontractor to perform a part within buyer's contract with the government, was an independent seller of the standard product which it was offering generally in the market.

If seller's knowledge that buyer had a contract with the government for anchor chains and would use round iron bars in making the anchor chains was a justification of buyer's repudiation, then similarly seller's unconditioned contract with the furnace company for pig iron could be repudiated, and the furnace company's unconditioned contract with the mining company for ore could be repudiated, and so on back to the ultimate of rawness in all materials.

Omnia Commercial Co. v. United States, 43 Sup. Ct. 437, 67 L. Ed. —— (April 9, 1923), and buyer's other citations have been examined, and they do not enable us to see how the government has touched either the subject-matter of this contract or the parties in a way to render the contract impossible of performance.

The judgment is affirmed.