## INGRAM DAY LUMBER CO. v. McLOUTH.

(District Court, E. D. Michigan, S. D. May 29, 1925.)

No. 6327.

1. **Pleading ⊚⟾237(3)—Leave to file amended plea, setting up defense tried, granted.**

In action for breach of contract to purchase lumber for use in performing contract with the Emergency Fleet Corporation, where defense based on cancellation of contract by such corporation was anticipated by plaintiff, and met by evidence and argument and it did not claim surprise, and has not asked to have case reopened, leave to file amended plea, setting up such defense, will be granted after hearing and submission.

2. **United States ⊚⟾72—Anticipated profits not recoverable by contractor for material on cancellation by government of principal contract.**

The cancellation by the Emergency Fleet Corporation of a contract for building of ships, under the power conferred on the President by Act June 15, 1917, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¹/₁₆d), operated as

a cancellation or frustration of subcontracts for materials, whether or not the seller had knowledge of the principal contract, and he is not entitled to recover anticipated profits from the principal contractor as damages for breach of the contract.

**At Law.** Action by the Ingram Day Lumber Company against Sidney C. McLouth, revived against the American Loan & Trust Company, administrator. Trial to court, and judgment for plaintiff for part of demand.

White & Ford, of Gulfport, Miss., and Miller, Canfield, Paddock & Stone, of Detroit, Mich., for plaintiff.

Frederick L. Eaton, Asst. U. S. Atty., of Detroit, Mich. (Chauncey G. Parker and I. V. McPherson, both of Washington, D. C., of counsel), for defendant.

SIMONS, District Judge. Plaintiff, a Wisconsin corporation, entered into written contract with McLouth, a resident of Michigan, now deceased, on February 5, 1919, whereby plaintiff would sell McLouth certain quantities of cut and manufactured lumber according to certain specifications furnished to plaintiff, the lumber to be used by McLouth in the building of tugs. McLouth, at the time of entering into the contract with plaintiff, had two contracts with United States Shipping Board Emergency Fleet Corporation for the construction of nine ocean-going tugs. On or shortly before May 6, 1919, McLouth received a telegram from the Fleet Corporation suspending further operations on his contract, whereupon, under date of May 6, 1919, his purchasing agent wired plaintiff as follows:

"Ingram Day Lumber Co.:

"McLouth advised tugs contract canceled. Stop further shipment pending instructions.
"[Signed]    John J. Manley."

Under date of September 17, 1919, the Fleet Corporation by letter formally canceled McLouth's contract. At the time of cancellation plaintiff's contract was partly performed and partly unperformed. It brings this suit to recover, among other items of damage, its loss of profits upon the unfulfilled portion of the contract. The suit was tried without a jury, and McLouth's contracts with the Fleet Corporation, the telegrams and letters to him from the Fleet Corporation suspending and canceling the contract, were received in evidence, subject to the objection of plaintiff that they were not material to the issues involved in the case. To the declaration filed in the suit against McLouth, and in the revived suit against his personal representative after decease, the defendant pleaded the general issue. Some time after the case was heard and submitted, defendant moved for leave to file an amended plea, setting up facts in relation to the making of the ship contracts with the Fleet Corporation and the cancellation thereof, to which motion plaintiff formally objected.

### Findings of Fact.

Upon consideration of the evidence, I have arrived at the following findings of fact:

(1) That at the time plaintiff's contract was entered into with McLouth the plaintiff knew that the lumber was to be furnished for the building of tugs, but did not know that McLouth had a contract with the Fleet Corporation, or that the tugs were being built for the Fleet Corporation.

(2) That, if plaintiff's lost profits constitute a proper element of damage, plaintiff's total damages amount to the sum of $42,789.96.

(3) That, if plaintiff's lost profits under the contract are not an element of damage, the plaintiff is entitled to the sum of $647.65, with interest from the date of the suspension of the contract.

[1] Before giving consideration to the principal issue of law involved, I dispose of the defendant's motion for leave to file an amended plea and the objection thereto. This case was tried without a jury. The defense sought to be pleaded in the amended plea was fully anticipated by the plaintiff, and was quite fully met both by evidence and argument. It did not at the time of trial claim surprise, and has not since asked to have the case reopened for the purpose of introducing further evidence to meet the issues raised by the proposed amended plea. It seems to me clear that the interests of justice demand, and that in the proper exercise of sound judicial discretion, that I ought to grant the motion of the defendant, and the objection to it is overruled.

[2] The principal question involved is whether the plaintiff is entitled to recover its lost profits under the contract; it being contended by the plaintiff that the contract was breached by McLouth, and it being contended by the defendant that there was no breach, but that the contract was canceled or frustrated by the action and under the direction of competent authority.

The case was ably argued and ably briefed by counsel both for plaintiff and defendant. Not stopping to discuss for the purpose of this determination the many cases which throw light on the so-called doctrine of frus-

tration, or impossibility of performance resulting from the acts of the sovereign or competent authority, and which have been well classified by the plaintiff as, first, charter party cases, where the vessel chartered has been taken over by the English or American government; second, contracts directly with the United States government; third, the English coronation cases—I come to the somewhat narrow issue of law presented, which may for the purpose of conciseness be stated as follows: Does the Urgency Deficiencies Appropriation Act of June 15, 1917, authorize the President through his properly delegated agents, to cancel a contract between private persons for supplying material for ships to be built for the Emergency Fleet Corporation, and is such cancellation effective as to a party not advised of the purpose of, and parties to, the ship-building contract?

The Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¼d), relating to wartime powers of the President, authorized the President to cancel through governmental agencies contracts for the purchase of ships or ship material. The power and authority thus vested in the President was delegated by him from time to time to the United States Shipping Board Emergency Fleet Corporation. Principal reliance is placed by each party upon a decision of a Circuit Court of Appeals, in which the facts seem to approximate the facts in the instant case; the plaintiff relying upon American Chain Co. v. Interstate Iron & Steel Co. (C. C. A.) 291 F. 1006, decided June 27, 1923, certiorari denied October 22, 1923, 263 U. S. 709, 44 S. Ct. 36, 68 L. Ed. 518, and the defendant relying upon Todd Dry Dock & Construction Corporation v. Sumner Iron Works (C. C. A.) 289 F. 217, decided May 7, 1923, certiorari denied October 8, 1923, 263 U. S. 700, 44 S. Ct. 5, 68 L. Ed. 513.

In the latter case the Circuit Court of Appeals for the Ninth Circuit apparently reached a conclusion different from that of the Circuit Court of Appeals for the Seventh Circuit in the former case. The Todd Case, first decided, does not appear to have been considered in the Chain Company Case, and is not cited therein. The facts in each of the cases referred to are sufficiently set up

in the opinions, and I will not restate them. The holding of the Todd Case was to the effect that the authority conferred on the President by the Act of June 15, 1917, to cancel any existing or future contract for the building, production, or purchase of ships or material, is without limitation or restriction.

A careful analysis of the Chain Company Case would seem to indicate that it is not in conflict with the Todd Case. In the former no government agency canceled the contract in suit, or directed or required the original contractors to modify or cancel the contract. The contract was for a large quantity of standard material, only a small portion of which would have been used in completing buyer's contract with the Fleet corporation; the court holding the inference to be not strained that the bulk of buyer's business was in making chains other than the anchor chains being supplied to the government.

It is vigorously urged, however, on the part of the plaintiff, that the circumstance in the instant case which brings it under the holding of the Chain Company Case, and excludes it from the effects of the holding in the Todd Case, is that in the instant case the plaintiff had no knowledge that the material furnished was to be used in fulfillment of a contract by McLouth with the Emergency Fleet Corporation, and that the statute referred to cannot be read into its contract, unless the purpose for which the material was to be used was within the contemplation of the parties to the contract. It would appear, however, even in the Chain Company Case, relied upon by plaintiff, that the seller's knowledge as to the purpose for which the material was to be used was considered immaterial. In view of the foregoing, I am of the opinion that the instant case is ruled by the decision in the Todd Case, and not by the decision in the Chain Company Case.

Judgment may be entered in favor of the plaintiff, and as against the defendant, for such compensation as may adequately compensate the plaintiff, not to include profits lost upon the unfulfilled portion of the contract. This amount I have already indicated has been found to be the sum of $647.65, with interest from the date of the suspension of the contract, May 6, 1919.