## INGRAM–DAY LUMBER CO. v. McLOUTH.

(Circuit Court of Appeals, Sixth Circuit.
June 30, 1926.)

No. 4487.

1. **Pleading** ⊜⟹258(4)—**Discretion not abused in permitting defendant in action for breach of contract to purchase to file amended plea and introduce evidence that lumber was for ships being constructed for government and contract was canceled on suspension of such construction, whether filed prior to or after introduction of evidence to conform thereto (Rev. St. § 954 [Comp. St. § 1591]).**

In action for breach of contract for sale of lumber, trial court *held* not to have abused its discretion, under Rev. St. § 954 (Comp. St. § 1591), in permitting defendant to file amended plea and introduce evidence that lumber was for ships being constructed for government, and that contract was canceled when work was suspended by government, whether amended plea was filed prior to or after introduction of evidence to conform thereto.

2. **United States** ⊜⟹52½, **New, vol. 19A Key-No. Series.**

Emergency Fleet Corporation had power, under Act June 15, 1917, and "emergency shipping fund" provision of Urgency Deficiency Appropriation Act Oct. 6, 1917, to make contract on behalf of the United States for construction of ships, and to suspend and cancel it on making just compensation.

3. **United States** ⊜⟹52½, **New, vol. 19A Key-No. Series—"Just compensation" to one whose contract to construct ships for Emergency Fleet Corporation was canceled does not include lost profits (Act June 15, 1917 [40 Stat. 182]; Act Oct. 6, 1917 [40 Stat. 345]).**

"Just compensation" to one whose contract for construction of ships was canceled by Emergency Fleet Corporation under Act June 15, 1917, and "emergency shipping fund" provision of Urgency Deficiency Appropriation Act Oct. 6, 1917, does not include loss of profits that may be earned in completion of contracts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Just Compensation.]

4. **United States** ⊜⟹52½, **New, vol. 19A Key-No. Series.**

One undertaking to furnish materials not of standard sizes to buyer for construction of tugs for Emergency Fleet Corporation *held* a subcontractor, not entitled to recover lost profits when contract was canceled by the Fleet Corporation, under Act June 15, 1917.

In Error to the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Action by the Ingram-Day Lumber Company against Sydney C. McLouth, revived against the American Loan & Trust Company, administrator. From the judgment (6 F.[2d] 471), plaintiff brings error. Affirmed.

The plaintiff in error brought an action against McLouth to recover damages for breach of a contract by the terms of which the plaintiff agreed to manufacture and sell, and McLouth agreed to buy, at a specified price, approximately 1,500,000 feet of lumber of different sizes and kinds. In pursuance of this contract the plaintiff manufactured and shipped to McLouth about 600,000 feet of lumber, for which McLouth paid the contract price. McLouth then canceled the contract and refused to accept further shipments. No other lumber was manufactured or shipped, and no further expense incurred, by the Ingram-Day Company, after notice of cancellation.

It appears from the exhibits attached to the petition that this lumber was purchased and furnished for the completion of four tugs, and that the price named in the original order was increased by reason of the fact that the American Bureau of Shipping required longer scarfs for sides, bilge, and floor ceilings of the tugs than specified in the original order. The defendant filed a plea of the general issue, without notice of any special defense. Before the trial of the cause McLouth died, and the action was revived in the name

of American Loan & Trust Company, who was appointed administrator of his estate.

A written waiver of jury was filed and pending the trial by the court without the intervention of a jury and before judgment the defendant was given leave to file an amended plea, in which in addition to the general denial it was further alleged, in substance, that in August and September of 1918, the United States Shipping Board Emergency Fleet Corporation, acting for and on behalf of the United States, entered into two contracts with McLouth to construct for the United States government nine wooden ocean-going tugs at the price of $232,000 each. On February 5, 1919, McLouth entered into the contract in suit with the Ingram-Day Lumber Company to manufacture and furnish the lumber to be used in the construction of four of these tugs. On April 29, 1919, the Fleet Corporation, acting for and on behalf of the United States, ordered and directed McLouth to suspend all work on hulls Nos. 2418, 2716 to 2720, inclusive, and to order all work stopped on commitments made by him as to these hulls, and make no further commitments and expenditures as to them. Permission was given to McLouth, subject to the final approval of the Fleet Corporation, to solicit and accept domestic work for private account for tonnage, substantially equivalent to the tonnage covered by this suspension order; but it does not appear that McLouth obtained or could have obtained any private contract for any tonnage of like character. Defendant further alleged that on August 20, 1919, the Fleet Corporation further ordered McLouth to suspend all work on hulls Nos. 2415 to 2417, inclusive, and to order all work stopped on commitments made by him as to these hulls, and make no further commitments or expenditures as to them; that on May 6, 1919, McLouth notified the plaintiff his contract with the government had been canceled; that by reason of the cancellation of these contracts by the Fleet Corporation under authority of the shipping fund provision of the Urgency Deficiency Appropriation Act of June 15, 1917, and the executive order issued by the President of the United States on July 11, 1917, and December 3, 1918, McLouth without his fault was prevented from further performance of this contract; that under the terms of the act above referred to the Ingram-Day Lumber Company is not entitled to recover damages, but only just compensation for whatever cost and expense it had actually incurred in reference thereto prior to notice of cancellation.

It further appears from the evidence that pending unsuccessful efforts by McLouth to induce the Fleet Corporation to reinstate these contracts, the plaintiff suspended work in the manufacturing and preparation of this lumber and made no further shipments to McLouth, but at the time it received the notice of suspension it had expended $2,372.65 in the partial manufacture of 115,000 feet of lumber of sizes and dimensions for which there was no general market, and after the final cancellation of the contract by the Fleet Corporation, September 18, 1919, plaintiff remanufactured this lumber and sold it at a loss of $647.65. The trial court entered a judgment in favor of the plaintiff in the sum of $647.65, with interest from the date of suspension of the contract, with costs, and upon request of the plaintiff made the following finding of facts:

"(1) That at the time plaintiff's contract was entered into with McLouth, the plaintiff knew that the lumber was to be furnished for the building of tugs, but did not know that McLouth had a contract with the Fleet Corporation, or that the tugs were being built for the Fleet Corporation.

"(2) That, if plaintiff's lost profits constitute a proper element of damage, plaintiff's total damages amount to the sum of $42,789.-96.

"(3) That, if plaintiff's lost profits under the contract are not an element of damage, the plaintiff is entitled to the sum of $647.65, with interest from the date of the suspension of the contract."

Wm. J. Shaw and Ferris D. Stone, both of Detroit, Mich. (Miller, Canfield, Paddock & Stone, of Detroit, Mich., and White & Ford, of Gulfport, Miss., on the brief), for plaintiff in error.

Chas. A. Meyer, Asst. U. S. Atty., of Detroit, Mich., and I. V. McPherson, Sp. Asst. Atty. Gen. (Delos G. Smith and Chas. A. Meyer, both of Detroit, Mich., and I. V. McPherson, of Washington, D. C., on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It is claimed on the part of the plaintiff in error that the court erred to its prejudice in permitting the defendant to file its amended plea and in admitting evidence in reference to McLouth's contracts with the government, and their subsequent cancellation. A court has discretion to permit amendment to pleadings upon such con-

ditions as it shall in its discretion and by its rules prescribe. Section 954, R. S. (section 1591, Comp. St.); Mexican Central Ry. Co. v. Duthie, 189 U. S. 76, 23 S. Ct. 610, 47 L. Ed. 715; Mathieson Alkali Works v. Mathieson, 150 F. 241, 80 C. C. A. 129, certiorari denied, 204 U. S. 674, 27 S. Ct. 787, 51 L. Ed. 674. The court did not abuse its discretion in permitting this amended plea to be filed and receiving this evidence, regardless of whether the amended plea was filed prior to the introduction of the evidence or after the introduction of the evidence to conform thereto.

[2] The substantial question involved in this case is whether under the provision of the Act of June 15, 1917 (40 Stat. 182), and the "emergency shipping fund" provision of the Urgency Deficiency Appropriation Act of October 6, 1917 (40 Stat. 345), and subsequent amendments and acts in reference thereto, the plaintiff's contract with McLouth is affected by the cancellation of McLouth's contract with the government. This act authorized the President to exercise the power vested in him and expend the funds thereby and thereafter to be appropriated through such agency or agencies as he from time to time determined. In pursuance of this authority the President, by the executive orders of July 11, 1917, and December 3, 1918, directed that this power should be exercised by and through the United States Shipping Board Emergency Fleet Corporation. The Fleet Corporation therefore had the power to make this contract with McLouth and to suspend and cancel the same, upon making just compensation.

[3] It is clear from this provision that it was not the intent or purpose of Congress that just compensation should be based upon loss of profits that might be earned in the completion of the contract. Duesenberg Motors Corp. v. U. S., 260 U. S. 115, 43 S. Ct. 19, 67 L. Ed. 162.

The plaintiff relies largely upon the decision in the case of American Chain Co. v. Interstate Iron & Steel Co., 291 F. 1006; but the facts of that case are wholly different from the facts involved in this litigation. In that case the Chain Company had purchased from the Steel Company 4,800 tons of round iron bars from one to three inches in diameter of "standard sizes, shapes, and sections, as are within sellers' regular range of practice." The Chain Company at that time had a contract with the Fleet Corporation to furnish 140 anchor chains, 2½ inches in diameter, and of the total 4,800 tons less than 150 tons would be suitable for the manufacture of these anchor chains, and none were manufactured for the specific purposes, but were sold from the regular stock in trade of the Steel Company.

In that case the court specifically found that the seller was not a subcontractor, but an independent seller of its standard product which it was offering generally in the market. While there may be some things said in that opinion tending to support the claim of the plaintiff, nevertheless the language used must be construed in connection with the facts of that case.

[4] In the case at bar the plaintiff agreed to manufacture lumber of specified sizes and kinds as required by the American Bureau of Shipping to be used in the construction of these tug boats, which sizes were not standard and could not be sold upon the general market, but were of quality and size suitable for that particular purpose and none other. From this it appears that the plaintiff was a subcontractor, who had undertaken to manufacture and supply the specific materials necessary for the construction of the tugs which McLouth had contracted to construct for the Fleet Corporation.

In Todd Dry Dock & Construction Corporation v. Iron Works (C. C. A.) 289 F. 217, it was held that the provision of the Act of June 5, 1917, authorizing the Fleet Corporation to modify, suspend, or cancel any existing contract, is without limitation, and applies to contracts made by the government or its agents for ships and material, and extends, not only to the principal contracts, but to all subcontracts for material and labor, the performance of which would impose further obligation on the government, and that this provision of the act was read into every contract, and was notice to and binding on all contractors and subcontractors, and precludes recovery of anticipated profits from any contract or subcontracts so canceled. That case and American Chain Co. v. Interstate Iron & Steel Co., supra, were both pending in the Supreme Court at the same time, upon petitions for writs of certiorari, which petitions were denied, on October 8 and October 22, 1923, respectively. 263 U. S. 700, 44 S. Ct. 5, 68 L. Ed. 513; 263 U. S. 709, 44 S. Ct. 36, 68 L. Ed. 518.

This, we think, is the correct construction of these acts. They were passed to meet the exigencies of war, and because of the impossibility of knowing when the war would end, Congress wisely provided for the cancellation of these contracts to prevent the needless ex-

penditures of public funds, and the waste of material in the construction of ships and tugs no longer needed by the government for war purposes or for any other purpose. Just compensation would necessarily include any damages the principal contractor would be compelled to pay upon any contracts or commitments for material or labor. If subcontractors are entitled to damages for breach of contract based upon the profits they would earn if these contracts were completed, the benefits of the provision of this act in reference to just compensation would be substantially, if not wholly, lost to the government. The facts of this case are substantially identical with the facts involved in Todd Dry Dock & Construction Corporation v. Sumner Iron Works, supra. In that case the Supreme Court denied certiorari. For this reason the decision in that case is especially persuasive.

Judgment affirmed.