# DISTRICT OF COLUMBIA *v.* CAMDEN IRON WORKS.

## ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 172. Submitted March 7, 1901.—Decided May 13, 1901.

Any seal may be used and adopted by a corporation as well as an individual, and the same general principles respecting seals apply to municipal as well as private corporations.

It was for the Commissioners of the District of Columbia to determine whether the interests of the District required the contract in this case to be sealed. And the contract having been executed as and for the District, the seals of the Commissioners are to be assumed to have been affixed as the seal of the corporation.

Where work is to be completed within a specified number of days from the date of the execution of a contract, parol evidence that the contract was executed and delivered subsequent to its date, is admissible.

Covenant will lie on a contract under seal, though not fully performed, where absolute performance has been dispensed with.

Where strict performance by plaintiff is prevented or waived by defendant, a claim by defendant of fines and penalties for delay or failure cannot be sustained.

The matter of interest was properly left to the jury.

THIS was an action of covenant brought in the Supreme Court of the District of Columbia by the Camden Iron Works, a corporation created under the laws of the State of New Jersey, against the District of Columbia, to recover the price of certain iron pipe manufactured for and delivered to defendant by plaintiff in pursuance of a contract under seal. Several pleas were interposed, and among them the plea of *non est factum*, and the plea of the statute of limitations of three years. To the latter plea a demurrer was sustained, and issue was joined on the others. The case went to trial and resulted in a verdict in favor of the plaintiff below for $11,044.16, with interest from February 27, 1888. A motion for a new trial having been overruled, judgment was entered on the verdict, whereupon defendant carried the case to the Court of Appeals of the District, where the judgment below was affirmed. 15 App. D. C. 98. This writ of error was then sued out.

The contract bore date June 29, 1887, and, by its terms, purported to be made by the District of Columbia of the first part, and the Camden Iron Works by Walter Wood, president, of the second part. It concluded as follows:

"In witness whereof, the undersigned, William B. Webb, Samuel E. Wheatley, and William Ludlow, Commissioners of the District of Columbia, appointed under the act of Congress entitled 'An act providing a permanent form of government for the District of Columbia,' approved June 11, 1878, and the party of the second part to these presents have hereunto set their hands and seals the day and year first above written.

(Signed)          "WILLIAM B. WEBB,   [L. S.]
(Signed)          "S. E. WHEATLEY,   [L. S.]
(Signed)          "WILLIAM LUDLOW,   [L. S.]
          "*Commissioners of the District of Columbia.*
"(Corporate seal Camden Iron Works.)
(Signed)   "WALTER WOOD, *Pres't Camden Iron Works.*"

The contract was proved and offered in evidence, but its admission was objected to by defendant on the ground that it was not under the corporate seal of the District of Columbia. The objection was overruled, and defendant excepted. The evidence showed that no action was taken by the temporary board of Commissioners appointed under the act of Congress approved June 20, 1874, looking to the adoption of a corporate seal for the District, and none by the permanent board appointed under the act of Congress of June 11, 1878, until September 23, 1887, when the board passed an order that the seal of the District of Columbia, as adopted by an act of the legislative assembly of August 3, 1871, be placed in the official charge and custody of the secretary of the board; and it further appeared that this seal was not generally used until after the contract had been entered into, but was affixed to deeds conveying real estate, to bonds and securities, and, in some cases, to tax deeds. Plaintiff further proved that the contract was not in fact executed and delivered by the Commissioners before August 4, 1887. The evidence to this effect was objected to by defendant, the objection overruled and exception taken.

The opinion of the Court of Appeals further states the facts as follows:

" The contract provided for the manufacture of certain designated sizes of iron pipe by the plaintiff, and its complete delivery to the defendant, 'within 136 days *after the date of the execution* of the contract; one half of each size to be delivered on or before September 25, 1887, and the remainder on or before November 10, 1887.' For failure to deliver the pipes within the time thus fixed, the contract provided that there should ' be deducted from the contract price, as in said contract specified, one per cent of the contract price for all delinquent articles for each and every week day that they remained delinquent.' There was a further provision that for failure to complete the work at the time specified, there should be deducted from the money to become due under the contract ' the sum of ten dollars *per diem* for the same period estimated as liquidated and fixed damages to the District.'

" In the contract there was a provision made for inspecting

the iron pipes and ' to determine whether there was any reason for rejection, prior to delivery.' Payments were to be made after August 1, 1887, for all pipe 'received and accepted in proper order and condition, less twenty per cent of the amount found due, to be reserved until the satisfactory completion of the contract.'

" There appears to have been a suspension in the execution of the contract, owing to misunderstandings as to the qualities of the work, and the inspection thereof; and consequently, but a small proportion of the pipe was delivered prior to November 30, 1887. But after that date, pipe worth $11,404.09, at contract rates, according to estimate made, was delivered to and accepted by the District of Columbia, and used by the corporation. The total value, at contract rates, of all the pipe delivered to and accepted by the District of Columbia was $16,335.87, on which there was paid in cash, $5291.71, by two checks, which did not indicate that they were meant to be in full settlement of all moneys due under the contract; and the balance, $11,044.16, was more than counterbalanced by the fines and penalties charged up by the defendant for non-delivery of the pipe within the time specified in the contract. It was for this balance of $11,044.16 with interest thereon from the 27th of February, 1888, that this action was brought. There is no pretence that there was any demand made by the defendant for any more or other quantity of pipe than that delivered under the contract and which was refused to be delivered by the plaintiff. On the contrary, on November 30, 1887, when Captain Symons, the Assistant Engineer Commissioner of the District, requested that no more pipe should be cast for delivery under the contract, there remained to be cast about 340,000 pounds, on which the profits to the plaintiff, at contract prices, would have been about $1300. After the plaintiff's letter of November 30, 1887, assenting to the cancellation of the contract, *as to all pipe not then manufactured*, provided all pipe then manufactured should be taken and paid for at contract rates, without deductions, and Captain Symons' reply thereto, directing the sending on of the pipe then cast and accepted by Hoyt, the value of the pipe, at contract rates, actually shipped to the defendant, was $11,404.16

It was for this amount that the verdict was rendered, with interest, and without any allowance or deductions for forfeitures or penalties for non-delivery of pipe within the time prescribed by the terms of the contract."

Certain instructions to the jury were requested and given by the court on plaintiff's behalf. Instructions were also asked on behalf of defendant, and refused. To the rulings of the court in granting the instructions given for plaintiff, and in refusing the instructions asked for defendant, defendant duly excepted. The court also charged the jury generally, to which charge or any part thereof no exceptions were taken.

The errors assigned were to the effect that an action of covenant would not lie on the contract because it was not under the seal of the District of Columbia; that it was not competent for plaintiff below to show by parol evidence that the contract was finally executed and delivered by defendant at a date subsequent to that mentioned in the contract itself, from which latter date the time allowed for the manufacture and delivery of the pipe should be computed; that the manufacture and delivery of the pipe within the time mentioned constituted a condition precedent, and that no recovery could be had on the contract for any pipe delivered to and accepted by defendant after the time specified for delivery; that if plaintiff was entitled to recover for pipe delivered after the times mentioned, defendant was entitled to offset the penalties against the contract price as liquidated damages; and that no interest ought to have been allowed in the recovery.

*Mr. Andrew B. Duvall* and *Mr. Clarence A. Brandenburg* for plaintiff in error.

*Mr. Samuel Maddox* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The first section of the act " to provide a government for the District of Columbia," approved February 21, 1871, 16 Stat.

419, c. 62, provided : " That all that part of the territory of the United States included within the limits of the District of Columbia be, and the same is hereby, created into a government by the name of the District of Columbia, by which name it is hereby constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this act."

A governor and legislature were created; also a board of public works, to which was given the control and repair of the streets, avenues, alleys and sewers of the city of Washington, and all other works which might be intrusted to their charge by either the legislative assembly or Congress. They were empowered to disburse the moneys received for the improvement of streets, avenues, alleys, sewers, roads and bridges, and to assess upon adjoining property specially benefited thereby a reasonable proportion of the cost, not exceeding one third.

June 20, 1874, an act was passed entitled " An act for the government of the District of Columbia, and for other purposes." 18 Stat. 116, c. 337. By this act the government established by the act of 1871 was abolished, and the President by and with the advice and consent of the Senate was authorized to appoint a commission, consisting of three persons, to exercise the power and authority vested in the governor and the board of public works, except as afterwards limited by the act.

By a subsequent act approved June 11, 1878, 20 Stat. 102, c. 180, it was enacted that the District of Columbia should "remain and continue a municipal corporation," as provided in section two of the Revised Statutes relating to said District, (brought forward from the act of 1871,) and the appointment of Commissioners was provided for, to have and to exercise similar powers given to the Commissioners appointed under the act of 1874.

This legislation is considered and set forth in *Metropolitan Railroad* v. *District of Columbia,* 132 U. S. 1, 6.

By section thirty-seven of the act of February 21, 1871, which is applicable to the present Commissioners, *District of Colum-*

*bia* v. *Bailey*, 171 U. S. 161, 175, it was provided that "all contracts made by the said board of public works shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the secretary of the District; and said board of public works shall have no power to make contracts to bind said District to the payment of any sums of money except in pursuance of appropriations made by law, and not until such appropriations shall have been made."

Section five of the act of June 11, 1878, provided: "All contracts for the construction, improvement, alteration, or repair of the streets, avenues, highways, alleys, gutters, sewers, and all work of like nature, shall be made and entered into only by and with the official unanimous consent of the Commissioners of the District, and all contracts shall be copied in a book kept for that purpose and be signed by the said Commissioners, and no contract involving an expenditure of more than one hundred dollars shall be valid until recorded and signed as aforesaid."

On March 3, 1887, an act of Congress was approved, by which the sum of $100,000 was appropriated for "repairing and laying new mains," and "lowering mains," and for engineers and others under the water department of the district government. 24 Stat. 580, c. 389.

The contract in this case was signed by all of the Commissioners and recorded in a book kept for that purpose as required by the act of Congress. Unquestionably the Commissioners when they executed the contract were authorized to purchase iron pipe for the extension of the water service, and as the municipal corporation had the right to have a seal, which could be changed from time to time, it had the right to execute contracts under seal. The principal objection here is, however, that this was not the sealed obligation of the District. It is conceded that the Commissioners, who signed the contract officially, were not personally liable thereon, and that the contract bound the District, but it is insisted that the contract was not a specialty. The opinion of the Court of Appeals by Chief Justice Alvey satisfactorily disposes of this objection, and we concur with the views therein expressed.

The board of Commissioners was constituted by statute to carry the powers of the municipal corporation called the District of Columbia into effect. The Commissioners could adopt for the corporation any seal they chose, whether intended to be permanently used, or adopted for the time being. When, acting officially, as in this instance, they signed and sealed the instrument as for the corporation, their signatures and seals bound the corporation as by a specialty. As Judge Putman said in *Mill Dam Foundry* v. *Hovey*, 21 Pick. 417, 428: "A corporation as well as an individual person may use and adopt any seal. They need not say that it is their common seal. The law is as old as the books. Twenty may seal at one time with the same seal."

The general rule is "that when a deed is executed, or a contract is made on behalf of a State by a public officer duly authorized, and this fact appears upon the face of the instrument, it is the deed or contract of the State, notwithstanding that the officer may be described as one of the parties, and may have affixed his individual name and seal. In such cases the State alone is bound by the deed or contract, and can alone claim its benefits." *Sheets* v. *Selden's Lessee*, 2 Wall. 177, 187; *Hodgson* v. *Dexter*, 1 Cranch, 345.

As to private corporations, where authority is shown to execute a contract under seal, the fact that a seal is atttached with intent to seal on behalf of the corporation, is enough though some other seal than the ordinary common seal of the company should be used. *Jacksonville Railroad Co.* v. *Hooper*, 160 U.-S. 514; *Stebbins* v. *Merritt*, 10 Cushing, 27, 34; *Bank* v. *Railroad Company*, 30 Vt. 159; *Tenney* v. *East Warren Lumber Company*, 43 N. H. 343; *Porter* v. *Railroad Company*, 47 Maine, 349; *Phillips* v. *Coffee*, 17 Illinois, 154. Many of these cases are cited by Judge Dillon in his work on Municipal Corporations, (4th ed.) § 190, where he says: "Respecting seals, the same general principles apply to private and to municipal corporations. Thus, a corporation of the latter class would doubtless be bound equally with a private corporation by any seal which has been authoritatively affixed to an instrument requiring it, though it be not the seal regularly adopted."

Under the former corporate organization of the District a seal had been adopted, but it was not until after this contract was entered into that the board took official action in respect of it. It is to be assumed on this record that the Commissioners affixed their seals as the seal of the corporation. It was for them to determine whether the interests of the District required the contract to be sealed.

We agree with the Court of Appeals that this contract was not only the contract of the District, as is conceded, but that it was its deed, upon which an action of covenant could be maintained. It was therefore properly admitted in evidence, and recovery could be had thereon, if otherwise justified. As such an action is not barred in three years the demurrer to the plea of the three years' statute of limitations was necessarily sustained.

The next proposition of the District, that it was not competent for plaintiff below to show by parol that the contract was finally executed and delivered by the District at a date subsequent to the date of the contract, is without merit. The contract did not provide that the work was to be completed within one hundred and thirty-six days from its date, but " after the date of the execution of the contract." It is well settled that, in such circumstances, it may be averred and shown that a deed, bond or other instrument was in fact made, executed and delivered at a date subsequent to that stated on its face.

In *United States* v. *Le Baron*, 19 How. 73, it was ruled that a deed speaks from the time of its delivery, not from its date; and Mr. Justice Curtis, who gave the opinion, cited *Clayton's case*, 5 Coke, 1; *Oshey* v. *Hicks*, Cro. Jac. 263, and *Steele* v. *Mart*, 4 B. & C. 272. To which the Court of Appeals added *Hall* v. *Cazenove*, 4 East, 477. These cases fully sustain the doctrine that parties, situated as here, are not precluded from proving by parol evidence when a deed or contract is actually made and executed, from which time it takes effect.

In *Williams* v. *Bank*, 2 Pet. 96, 102, it was laid down as a general principle of law that " If a party to a contract who is entitled to the benefit of a condition, upon the performance of which his responsibility is to arise, dispense with, or by any act

of his own prevent the performance, the opposite party is ex-cused from proving a strict compliance with the condition. Thus, if the precedent act is to be performed at a certain time or place, and a strict performance of it is prevented by the ab-sence of the party who has a right to claim it; the law will not permit him to set up the non-performance of the condition as a bar to the responsibility which his part of the contract has im-posed upon him."

In this case the further performance of the contract was determined by the consent of the parties, but the contract was not rescinded except as to the future manufacture of pipe for delivery.

The third objection of the District is that an action of cove-nant on the contract would not lie to recover the price of the pipe that was delivered, because there had not been full per-formance; yet the pipe, to recover the price for which this action was brought, was, as the Court of Appeals said, manu-factured, delivered, and accepted under the contract, in part performance thereof, and with reference to the specifications and price agreed upon as set forth in the contract. The dis-pensation of complete performance did not make a new con-tract, nor alter the terms of the existing agreement. It was a mere waiver of further performance.

It is said that the demurrer to the plea of limitations, the ninth plea, ought to have been carried back to the declaration. The hearing of that demurrer was reserved by stipulation to the trial of the cause, no suggestion of this kind was then made, and the declaration was good as against a general demurrer. The company averred full performance, " except in so far as it was prevented or discharged from so doing by the defendant." That was not setting up a modified or substituted contract, but a waiver of a condition precedent to be performed by plaintiff.

In *McCombs* v. *McKennan*, 2 W. & S. 216, it was held that covenant may be sustained upon a contract under seal, notwith-standing by subsequent consent of the parties the place at which the articles called for were to be delivered was changed.

In *Construction Company* v. *Seymour*, 91 U. S. 646, it was held that defendant was liable on his covenant for the contract

price of the work when completed, where absolute performance had been waived. And in many cases of prevention by the defendant or of tender and refusal, the plaintiff has been held to have the right of action on a special contract, prevention or refusal being equivalent for that purpose to performance.

Assuming that full performance was dispensed with the court did not err in ruling that the right to sue upon the contract remained.

The court gave to the jury, on behalf of plaintiff, the following instructions:

"If the jury believe from the evidence that the plaintiff corporation was prevented from completing the delivery of pipe by it stipulated to be manufactured and delivered under the contract offered in evidence within the time or times therein limited by any act or omission on the part of the defendant, then the defendant is not entitled to charge against the plaintiff any fines or penalties for such delay in delivering pipes as was occasioned by such act or omission.

"If the jury believe from the evidence that the defendant, by its silence or conduct, caused the plaintiff corporation to believe, on or about the 1st day of December, A. D. 1887, that all pipe thereafter delivered would be taken and paid for at contract rates, without any deduction, and thereby induced the plaintiff to act on that belief and thereafter deliver pipe to the defendant, which the plaintiff would not have otherwise done, and the defendant accepted such pipe, the defendant is estopped from charging against the plaintiff any fines or penalties for not delivering such pipe within the time or times specified by the contract."

Defendant asked the following instruction, which the court refused to give:

"If the jury believe from the evidence that the failure of plaintiff to deliver the iron pipes mentioned in the contract given in evidence at the times and in the quantities specified, hindered and delayed the defendant in extending the water service in 1887, then the defendant had a right to charge against the price it agreed to pay the plaintiff for the pipe it undertook to deliver as liquidated damages the penalties provided in the contract."

The fourth question is whether the court erred in these rulings. Defendant's instruction was clearly wrong, and it seems to us that plaintiff's instructions fairly submitted the contention as to penalties and forfeitures to the jury. If strict performance by plaintiff was prevented or waived by defendant as contended on the facts, then the claim for fines or penalties for delay or failure to deliver the pipe could not be sustained.

The court left the matter of interest to the jury, and refused to give at defendant's request an instruction that no interest should be allowed except from the time of the institution of the suit. Exception was taken to this refusal, but, in view of the evidence, the trial court committed no error in that regard. Rev. Stat. D. C. § 829; *Washington & Georgetown Railroad* v. *Harmon's Admr.*, 147 U. S. 571, 585. To the general charge of the court in respect of interest no exceptions were preserved.

*Judgment affirmed.*

MR. JUSTICE BROWN and MR. JUSTICE MCKENNA dissented.