## ASTORIA MARINE IRON WORKS v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(District Court, D. Oregon.  February 4, 1924.)

**United States** ⊂⊃52½, New, vol. 19A Key-No. Series—Emergency Fleet Corporation held not liable on contract made as agent for the President.

The Emergency Fleet Corporation *held* not personally liable on a contract for ship construction made as authorized agent of the President, under the war powers conferred on him by Act June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), and where the contract expressly recites that it is made by the corporation representing the United States as "owner," and that the work is to be done for such owner, which shall pay the compensation therefor.

At Law.  Action by the Astoria Marine Iron Works against the United States Shipping Board Emergency Fleet Corporation.  On demurrer to, and motion to strike out parts of, the answer.  Overruled.

Cake & Cake, and L. A. Liljeqvist, all of Portland, Or., for plaintiff.
O. P. M. Brown, of Washington, D. C., and MacCormac Snow, of Portland, Or., for defendant.

BEAN, District Judge.  This is an action brought by the Astoria Marine Iron Works against the United States Shipping Board Emergency Fleet Corporation to recover approximately $188,000 for labor and material alleged to have been furnished by the plaintiff in installing machinery and equipment in 20 ship hulls for the defendant under a contract dated March 25, 1918.

The defendant in its answer denies certain allegations of the complaint, and for a further and separate defense alleges: That it is a corporation organized under the laws of the District of Columbia, by

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

295 FEDERAL REPORTER

the United States Shipping Board, under authority of the Shipping Act of 1916 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8146a–8146r), with power and authority to construct, maintain, and operate merchant vessels in the commerce of the United States. That the United States subscribed for and paid for all its capital stock with funds appropriated by Congress from the treasury, no part of which was used or to be used in connection with the machinery installation contract referred to in the complaint. That on April 6, 1917, the United States declared war on the German Empire, and thereafter, on June 15th of the same year, Congress passed an act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¹/₁₆d) authorizing and empowering the President to place orders with any person or corporation for such ships or ship material as the interest of the United States, as determined by him, might require during the progress of the war, and to suspend, modify, cancel, or requisition any contract for the production of ships or ship material, and to make just compensation therefor, and to exercise such powers through such agent or agents as he might select. That by virtue of the authority thus vested in him, the President by executive orders selected and appointed the defendant corporation as his agent to carry out the powers vested in him with respect to the construction and equipment of vessels. That pursuant to the powers thus vested in the President, and by him delegated to the defendant, the defendant, acting solely as the agent of the United States, and not on its own behalf as a private corporation, entered into the contract with the plaintiff referred to in the complaint for the installation by plaintiff of machinery and equipment in 20 hulls constructed for, owned, and to be used by the United States in the prosecution of the war. That at the time the contract was entered into the defendant disclosed to plaintiff that it was acting as the agent of the United States and on its behalf, and not in its private capacity. That the money used and to be used in carrying out the contract was money of the United States, appropriated by Congress by the Act of June 15, 1917, and subsequent appropriations. That on April 23, 1919, the defendant, acting under authority of the Act of June 15, 1917, and executive orders referred to, canceled the contract, and that by reason thereof the plaintiff has become entitled to recover from the United States, and not the defendant, its just compensation for such cancellation.

The plaintiff has demurred to and moved to strike out this defense, on the ground that it is immaterial and irrelevant, and constitutes no defense to the present action.

The legal status of the Emergency Fleet Corporation has been a frequent subject of judicial consideration, and it has been definitely determined by the highest court of the land that it is a private business corporation having a distinct entity, and is not entitled to the immunity of the sovereign, and may be sued as any other private corporation for its torts or on its contracts (U. S. v. Strang, 254 U. S. 491, 41 Sup. Ct. 165, 65 L. Ed. 368; Sloan Shipyard Cor. v. U. S. E. F. C., 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762), but so far as I am advised this is the first case in which the courts have been called upon to determine whether the Fleet Corporation is liable personally on contracts

made by it as an agent of the President in pursuance of the war powers conferred upon him by the Act of June 15, 1917 (40 Stat. 182), and subsequent legislation. By this act the President was authorized and empowered, within the limits of the amount therein appropriated, to place orders with any persons for ships or ship material, as the interest of the government, to be determined by him, might require during the prosecution of the war, and to modify, suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or ship material, and to purchase, requisition, or take over the title to or the possession of, for the use of the United States, any ship now constructed or in the process of construction, or hereafter constructed, or any part thereof, and on behalf of the United States to make just compensation therefor, and, in case the amount thereof is unsatisfactory to the person entitled to receive the same, he shall be entitled to payment of 75 per cent. of the amount so determined by the President, and shall be entitled to sue the United States to recover such excess amount as, added to the 75 per cent., will make just compensation, in the manner provided in sections 24 and 145 of the Judicial Code (Comp. St. §§ 991, 1136).

The President was authorized to exercise the powers and authority thus vested in him and expend the money appropriated through such agent or agents as he should determine from time to time. By subsequent executive orders the President appointed the Emergency Fleet Corporation as his agent, and delegated to it all the powers and authority vested in him by the act referred to relating to the purchase, construction, or equipment of ships, contracts, or material for ships. It is alleged in the answer that the contract in suit was made by the defendant as such agent, and by virtue of the authority delegated to it by the President, and not in its own behalf.

If this is true, and it must be so assumed for present purposes, the defendant is not in my judgment liable personally on the contract so made, any more than the President would have been if he had made it himself. It is an established rule of law that, where a public officer or agent acts in the line of his duty and by legal authority, he is not responsible on any contract he makes in that capacity, and when his contract or engagement is concerned with a subject fairly within the scope of his authority, it shall be considered to have been made by him officially and in his public character, unless the contrary appears by satisfactory evidence of an absolute and unqualified engagement to be personally liable, although such contract may be under his hand and seal. Parks v. Ross, 11 How. 371, 13 L. Ed. 730; Hodgson v. Dexter, 1 Cranch, 362, 2 L. Ed. 130; Sheets v. Selden's Lessee, 2 Wall. 187, 17 L. Ed. 822; Belknap v. Schild, 161 U. S. 17, 16 Sup. Ct. 443, 40 L. Ed. 599.

A copy of the contract between the plaintiff and defendant is appended to the answer, and there is nothing in it which manifests an intention on the part of the defendant to be personally liable for its performance. It begins by reciting that it was made between the party of the first part and the "United States Shipping Board Emergency Fleet Corporation, representing the United States of America

(hereinafter called the owner), party of the second part," and then provides that the plaintiff, shall install the machinery and equipment in 20 hulls now being built for "the owner," and that "the owner" shall pay a certain consideration therefor. It is alleged in the answer that the hulls referred to in the contract did not belong to the defendant, but were the property of the United States, and that the moneys to be used in payment on the contract were moneys of the United States, regularly appropriated by Congress, and that these facts were known to the plaintiff at the time the contract was entered in.

Great reliance is placed by plaintiff on the decisions in the Sloan Shipyards, supra, and kindred cases; but as I read the opinions in these cases the question here presented, although urged upon the attention of the court, was deemed not to be within the record, and is not decided. Two of the cases were appeals from judgments sustaining demurrers to the complaints and dismissing the actions, on the ground that the Fleet Corporation was a mere bureau or arm of the government and entitled to the immunity of the sovereign. The court ruled that it was a public business corporation, and liable to be sued for its torts or on its contracts the same as any other corporation, and therefore the complaints stated a cause of action; but the question of whether it is personally liable on contracts made by it as agent or representative of the President under the war powers conferred upon him was not decided.

It follows, therefore, that the motion and demurrer should be overruled; and it is so ordered.