## VIRGINIA BRIDGE & IRON CO. v. CAMP et al.

(Circuit Court of Appeals, Fifth Circuit. February 1, 1926. Rehearing Denied March 5, 1926.)

No. 4518.

1. **Contracts** ⬅ 242—Structural steel contractor held entitled to extension of time and agreed additional compensation for completion on time, notwithstanding owners' arbitrary refusal of extension.

Structural steel contractor *held* entitled to extensions of time within which to complete work, equivalent to delays caused by owners and entitled to additional compensation for completion within contract time, notwithstanding contracts provided for extensions on agreement of parties and owners arbitrarily refused to agree to extension.

2. **Evidence** ⬅ 17.

Courts judicially know that September 28, 1920, fell on Tuesday.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit by the Virginia Bridge & Iron Company against Clarence Camp and others. Decree for plaintiff in an unsatisfactory amount, and it appeals. Reversed and remanded, with directions.

For opinion below, see 298 F. 510.

James J. G. Cooper and Charles P. Cooper, both of Jacksonville, Fla., for appellant.

R. L. Anderson, of Ocala, Fla., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a suit in equity, by a contractor who furnished and erected the structural steel used in the construction of a phosphate handling plant at Fernandina, Fla., to enforce a statutory lien for a balance due under a contract with the owners of the plant. There was a decree in favor of the contractor, but the amount found to be due it is based upon a price of steel 1½ cents per pound less than the price sought to be recovered. The contractor appeals for the purpose of having that part of the claim which was rejected, representing approximately $16,000, established against the owners and included in the decree of foreclosure.

On December 4, 1919, the contractor and the owners entered into a contract whereby the contractor agreed to furnish and erect the structural steel upon a site and foundations to be furnished by the owners on the water front at Fernandina for a phosphate handling plant. The price of the steel was fixed at 6¼ cents per pound. On January 13, 1920, the parties entered into a second contract, whereby the contractor agreed to furnish, but not to erect, structural steel for other parts of the plant, including a loading tower and three track hoppers. The price of the steel under this contract was fixed at 8½ cents per pound. Under these contracts the owners were to have the foundations ready by March 15, 1920. The contractor agreed to complete the work under the first contract by May 15, and under the second contract by July 1, 1920. Each contract contained the usual arbitration clause. The owners did not furnish the foundations, and no work was done under either of these contracts.

On August 10, 1920, the parties entered into a new contract. The owners agreed in article IV to have the foundations for the storage building ready not later than September 20, and to provide additional foundations in time to allow continuous and complete erection of all steel work covered by the contract by December 1, 1920, and in article V, in the event of the failure of the owners to provide foundations, that the contractor would be allowed an extension of time equivalent to any delay, upon giving notice in writing. The contractor agreed in article VI to assume the risks of delay incident to strikes and transportation difficulties, and to complete the work covered by the contract not later than December 1, 1920, or during such extension of time as might be mutually agreed upon for delays caused by the failure of the owners to have the foundations ready, as provided in article IV. It was finally agreed that, if the contractor should complete the steel work by December 1 or such extension as might be mutually agreed upon, the owners would pay 1½ cents per pound on all steel furnished in addition to the prices fixed in the first and second contracts, but that in case of default in this particular the contractor should only receive the amount specified in the original contracts. There was an additional clause allowing the cost price plus 10 per cent. for the erection of steel under the second contract.

The owners failed utterly to comply with their obligation to have the foundations ready on September 20. On that date the contractor found the tide rising and falling on the site, and notified the owners that it made claim for extension of time until the foundation should be ready. Within a few days a conference was held in Fernandina, and because of lack of foundations it was agreed that the use of a locomotive crane, which the owners had agreed to furnish, should be dispensed with, and that instead the owners should provide a trestle and the contractor substitute a "traveler" for the crane. On September 28 the owners advised the contractor that the trestle would be ready for use "Thursday week," and that, if the contractor should be delayed by reason of the trestle not being ready, it would be granted an extension of time to complete its contract equivalent to the time of delay.

The contractor accepted the suggested change, but was unable to begin work until October 13. The contractor was again delayed from November 2 to November 9 by a concrete slab, which was so placed as to interfere with the use of the traveler, and gave notice demanding an extension equivalent to that delay. But the owners refused to agree to any delay whatever. The contractor substantially completed the work under its contract by December 1, 1920. According to a report approved by the engineer of the owners, there remained a few bolts to be put in and several places in the painting "to be touched up." Everything else was done to make the work complete by December 14, except that, because some of the foundation had not even then been put in, it was a physical impossibility to complete every small detail. But the contractor left the job at the request of the owners, made in order to save the ex-

pense of laborers under the cost plus feature of the second contract.

The District Court construed the last contract to mean that the contractor, unless it could show a strict compliance on its part, was not entitled to recover the 1½ cents per pound in addition to the contract price fixed in the original contracts.

[1, 2] Assuming, but without deciding, that this is the correct rule to apply, we are of opinion that nevertheless the contractor is entitled upon the evidence to recover the additional compensation specified in the contract of August 10, for the reason that the contract was literally performed, except in so far as that was rendered impossible by the owners, within the time limited by extension of time to which the contractor was entitled. We take judicial notice that September 28, 1920, fell on Tuesday. 15 R. C. L. 1100. "Thursday week," mentioned in the owners' letter of September 28, was October 7. Six days intervened before October 13, when the contractor was first able to begin the erection of steel at the plant. The contractor had already claimed an extension which had been agreed to by the owners, and therefore a delay of six days was "mutually agreed upon." Extension for delay was demanded by the contractor of seven days of lost time, extending from the 2d to the 9th of November, and the contractor was entitled to it under article V of the contract.

It is true that article VI provides that extensions of time for delay in furnishing foundations should be mutually agreed upon, and that article VII has the same provision. However, it is to be noted that the original contracts provide for arbitration in the event the parties could not agree, and although arbitration is not provided for in the new contract, yet it was supplemental to the old contracts. It was physically impossible for the contractor to erect steel until the foundations were laid. There is nothing in the evidence to indicate that the contractor would not have completely finished its work by the 1st of December if the owners had furnished the foundations as they agreed to do. Besides, the contractor did not delay the other work which remained to be done in order to complete the plant. The owners have therefore secured all the benefits to be derived from the completion on time of the steel work. They prevented strict performance by the contractor, and cannot now take advantage of their own wrong or be heard in a court of equity to say that they arbitrarily refused to grant an extension of time made necessary by their own default. District of Columbia v. Camden

Iron Works, 21 S. Ct. 680, 181 U. S. 453, 45 L. Ed. 948. The contractor was therefore entitled to an extension of 13 days beyond December 1, 1920, and in that time it complied strictly with its obligations and became entitled to the compensation fixed by the contract of August 10, 1920.

The decree is reversed, and the cause remanded, with directions to include in the decree the additional amount claimed by appellant.