## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. GALVESTON DRY DOCK & CONSTRUCTION CO.

(Circuit Court of Appeals, Fifth Circuit. June 5, 1926. Rehearing Denied July 20, 1926.)

No. 4713.

I. **Appeal and error** ⬅➡345(1)—Exceptions, bill of ⬅➡36(3).

Where motion for new trial is filed, the time for signing bill of exceptions and suing out writ of error does not begin to run until the court acts on the motion.

2. **Estoppel** ⬅➡56—To create estoppel in pais, one party must have been induced to change his position to his detriment.

Conversations between parties to a contract, after it has been performed, cannot change their rights thereunder, unless they induce one party to change his position to his detriment and so create an estoppel.

3. **Evidence** ⬅➡441(1)—Parol agreement preceding or contemporaneous with written contract not admissible to vary it, in absence of fraud, accident or mistake.

In the absence of fraud, accident, or mistake, it is not open to a party to a written

contract to prove parol agreements or understandings between the parties before or at the time of execution of the contract, at variance with or contradictory to its terms.

**4. United States ☞52½, New, vol. 19A Key-No. Series.**

By Merchant Marine Act 1920, §§ 12, 35 (Comp. St. Ann. Supp. 1923, §§ 8146¼eee, 8146¼s), authority to recondition or repair vessels is vested solely in the Shipping Board, but it may exercise such powers through Emergency Fleet Corporation as its agent, and contracts for repairs made by latter are to be construed in light of such provisions.

**5. United States ☞52½, New, vol. 19A Key-No. Series—Contracts made by Emergency Fleet Corporation for repair of vessel held to have been made as agent for Shipping Board, and not to obligate Fleet Corporation to pay therefor.**

A contract made by the Emergency Fleet Corporation in September, 1920, for repair of a vessel, "work to be * * * charged to the account of the United States Shipping Board," held clearly to have been made as agent for the Shipping Board, and not to obligate the Fleet Corporation to pay for the repairs contracted for.

**6. United States ☞47.**

An agent of the government or of a branch thereof is not personally liable on a contract made on behalf of his principal, while acting within the scope of his authority.

In Error to the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Action at law by the Galveston Dry Dock & Construction Company against the United States Shipping Board Emergency Fleet Corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

J. Frank Staley, Sp. Asst. Atty. Gen., and H. M. Holden, U. S. Atty., of Houston, Tex., for plaintiff in error.

Maco Stewart, of Galveston, Tex., and Albert J. De Lange, of Houston, Tex. (Clarence Milheiser, of Houston, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error, Galveston Dry Dock & Construction Company (herein referred to as the plaintiff), against the plaintiff in error, United States Shipping Board Emergency Fleet Corporation (herein called the defendant or the Fleet Corporation), to recover the amount alleged to be due for work done and material furnished by plaintiff under three contracts, evidenced by plaintiff's acceptance of written orders, dated, respectively, September 24, 1920, September 25, 1920, and October 4, 1920; the following being a copy of the first-mentioned order, omitting the attached statement of the labor and material called for:

"Authorization to Perform Work Chargeable Division of Construction and Repair.

"United States Shipping Board Emergency Fleet Corporation to Galveston Dry Dock & Construction Co. Date, September 24, 1920. You are hereby authorized to perform work on the steamship Latham as itemized in attached Req. No. G-88-d-21.

"Work to be performed on time and material basis, charged to the account of the United States Shipping Board, to be audited and checked by representatives of the comptrollers; statement covering the cost to be rendered to the Division of Construction and Repair at New Orleans, La.

"In performing work requested on this order, workmanship and materials must be of the very best throughout, and in no case will materials of less weight or thickness than the original be allowed for the parts replaced, and in every case must meet the requirements of the Classification Society, the owner or his representative, and the Steamboat Inspection Service, United States Department of Commerce. No extras will be allowed, unless covered by separate written order duly authorized on this form.

"While the vessel is undergoing repairs or alterations at the contractor's yard or wharf, the contractor shall be held responsible for and make good at his expense, and all damage of whatsoever nature, or/and loss to the vessel or/and its equipment or/and its movable stores, except where such damage or loss is due to causes beyond the contractor's control. The contractor is to fully protect the ship and owners against any and all claims for injury to workmen engaged by him or his subcontractors in carrying out work on vessel.

"It is agreed that the work outlined in attached requisition shall be completed by October 5, 1920, without working overtime. [Signed] W. A. Ridout, Asst. Dist. Mgr. Repairs, By Thos. G. Fielding, Accredited Representative Division of Construction and Repair Department.

"Though the above is not meant to be in the nature of a contract, it is, however, to be a guide for this department, and, if the work is not completed by you in a reasonable time, we will consider ourselves justified in cancel-

ing our order with you and reawarding the incompleted work to some other contractor."

Except as to dates and attached itemized statements of work and material, the other two orders were like the one above set out. Plaintiff's original petition alleged the making of the above-mentioned contracts, plaintiff's compliance with its obligations thereunder, the amount due plaintiff for the material furnished and the labor done under those contracts, and defendant's refusal to pay that amount. After the defendant had demurred to the original petition, plaintiff filed an amended petition. The petition as it was amended contained allegations to the following effect:

Prior to September 21, 1920, the defendant delivered the steamship Latham to plaintiff's dry dock at Galveston under an agreement to have repairs made thereon. On that date the plaintiff, in order to save the Latham from destruction by a threatened hurricane, submerged the dry dock with the Latham on it. When the dry dock with the Latham on it was raised on September 24, 1920, the Latham was found to need repairs in addition to those which had previously been contracted for; the additional repairs being what was called for by the three contracts sued on. While plaintiff was making the repairs called for by the contracts sued on, the Fleet Corporation, with checks signed by it, paid plaintiff various sums of money for repairs made prior to September 21, 1920, under similar contracts, whereby plaintiff was led to believe, and did believe, that the contracts sued on were with the Fleet Corporation, and but for such acts and facts and belief plaintiff would not have done the work called for by the contracts sued on, and by reason of its said acts the Fleet Corporation is now estopped to deny that it is bound for such work. At the time said work was ordered performed, authorized agents of defendant 'ordered same done for and charged to defendant, with the understanding that a written contract and confirmation would be delivered to plaintiff, and it was the agreement and understanding between plaintiff and defendant that the work under the contracts sued on would be charged to and paid by defendant; and when the contracts sued on were handed to plaintiff by defendant, plaintiff construed same to be chargeable to defendant. It was understood between the parties that the use of the said wording in said contract "United States Shipping Board" was but a short way of expressing the name of the defendant, United

States Shipping Board Emergency Fleet Corporation. After the completion of the work under the contracts sued on, plaintiff presented its bill therefor to the Fleet Corporation, and the latter did not deny that the amount payable for the work was chargeable to it, but admitted liability therefor, and claimed that it was entitled to offset an equal amount against the plaintiff on the ground that the damages to the Latham which were repaired under the orders sued on were due to negligence of the plaintiff in sinking the Latham and in failing to take precautions to avoid the damages which resulted from the sinking.

The defendant demurred to plaintiff's amended petition and excepted to several parts thereof, alleging what occurred between plaintiff and defendant before and after the making of the contracts sued on. One of the grounds of the demurrer to the amended petition was to the effect that its allegations showed that defendant did not contract with plaintiff for the services for which the suit was brought. The demurrer and the exceptions were overruled. The answer to the amended petition put in issue its allegations, and set up the defense that the damages to the Latham which were repaired under the contracts sued on were due to plaintiff's negligence in submerging the Latham without taking reasonable precautions to shut out water from the engine room and other parts of the vessel where the damage from water was done.

Plaintiff adduced evidence to the following effect: Before and after the making of the contracts sued on plaintiff had sundry dealings with the Fleet Corporation, acting through the same officials with whom it dealt in the transaction in question. Plaintiff and other concerns were paid for work done under contracts like those sued on by checks signed by the Fleet Corporation by its official or officials, such checks being drawn on the Treasurer of the United States. There was no evidence of any discussions or statements by or between the plaintiff and officials of the Fleet Corporation as to the meaning of any of the provisions or terms of the contracts sued on. The Latham was a concrete vessel. Before it was placed in plaintiff's dry dock on September 7, 1920, its hull had been cracked, with the result that, after the loose concrete had been cut out, there was a crack in the hull between the keel and the bilge about 160 feet long, about 5 feet wide at one end, and running down to nothing.

D. T. Langbehn, plaintiff's president, aft-

er testifying to his having conversations and correspondence with D. T. Williams, district manager of the Fleet Corporation, and other officials of that corporation, in regard to doing work on the Latham, was asked by plaintiff's counsel the following question: "In doing all of this work on the Latham, with what company or concern did you believe you were doing business?" The defendant objected to this question on the ground that it called for a conclusion of the witness. The court overruled the objection, the defendant excepted to that ruling, and the witness answered: "We were doing business with the United States Shipping Board Emergency Fleet Corporation, of which Mr. D. T. Williams held himself out to be the district manager."

The following is an extract from the bill of exceptions in reference to testimony of the same witness:

"And thereafter, while the same witness was on the stand, the following question was propounded to him by plaintiff: 'Q. Did you act on that belief yourself? I say, did you act on the belief, in accepting the orders and doing the work, that you were dealing with the United States Shipping Board Emergency Fleet Corporation?' To which question defendant objected, on the ground that it called for a conclusion of the witness and was an attempt to vary by parol the terms of a written contract, upon which plaintiff's suit was based, and, the objection being overruled by the court, the witness replied: 'A. Certainly.' And thereafter the plaintiff asked the witness the following question: 'Q. By whom did you expect to be paid?' To which question the same objection was urged by defendant, and, the objection being overruled by the court, the witness answered: 'A. By the Emergency Fleet Corporation, Shipping Board.' To which action of the court in overruling said objections and admitting said answers defendant then and there in open court excepted."

Judgment was rendered in favor of the plaintiff on January 22, 1925. On January 26th, during the same term of court, the defendant filed a motion for a new trial. This motion was overruled on July 14, 1925, during the succeeding term of the court. The bill of exceptions was signed on July 17, 1925, and the writ of error was sued out on the same day. The transcript contains a request by the defendant that the jury be instructed to find in its favor, and a notation by the presiding judge that that request was

refused, but no mention of this is contained in the bill of exceptions.

[1] There is no merit in the plaintiff's motion to strike the bill of exceptions, which was signed during the term at which the motion for a new trial was overruled. The time for signing a bill of exceptions and suing out a writ of error did not begin to run until the court acted on the motion for a new trial. Texas Pacific Railway Co. v. Murphy, 111 U. S. 488, 4 S. Ct. 497, 28 L. Ed. 492. As the bill of exceptions does not mention defendant's request for a directed verdict or the court's action thereon, that ruling is not properly presented for review.

The allegations of the amended petition as to what occurred before and after the execution of the contracts sued on do not show facts warranting the conclusion that those contracts had meanings or effects different from what was expressed by the language of the written instruments evidencing them. The allegations as to payments for other work done by the defendant under similar contracts are consistent with such payments having been made by checks drawn by the Fleet Corporation on the Treasurer of the United States, thereby indicating that the defendant, in having the work done and in giving checks to pay for it, was acting in its capacity as an agent of the Shipping Board, an administrative branch of the government. The allegations as to statements or representations made by representatives of the Fleet Corporation in the negotiations or communications which preceded the execution of the contracts sued on are of facts which are not provable by parol evidence for the purpose of impeaching or varying the meaning of the written instruments sued on.

[2, 3] The allegations as to what occurred between plaintiff and representatives of the defendant in reference to the work under the contracts sued on after that work was completed do not show that, in reliance on any admission made by the defendant's representatives, the plaintiff changed its position, with the result of estopping the defendant to deny its liability on the contracts sued on. The statement as to the understanding of the parties as to the meaning of language used in the written instruments, unaccompanied by an allegation as to what was said or done in that connection, discloses the mere opinion or conclusion of the pleader. In the absence of fraud, accident, or mistake, none of which is shown by the allegations of the amended petition, it was not open to the plaintiff to prove parol agreements or un-

derstandings between the parties, before or at the time of the execution of the contracts sued on, which are at variance with or contradictory of the terms of the written instruments evidencing those contracts. Parol proof of prior or contemporary negotiations or representations is not admissible to vary the terms or legal effect of the written instruments evidencing the contracts sued on, or to show that defendant estopped itself to invoke the written instruments as the sole evidence of the engagements of the parties. The Delaware, 14 Wall. 579, 603, 20 L. Ed. 779; Insurance Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674; Kramer v. Harsch (C. C. A.) 278 F. 860; Connecticut Fire Ins. Co. v. Buchanan, 141 F. 877, 73 C. C. A. 111, 4 L. R. A. (N. S.) 758. The meaning and legal effect of the written instruments evidencing the contracts were not subject to be changed or modified by evidence of the beliefs or conclusions in regard thereto of a representative of the plaintiff.

[4] When the contracts sued on were made, the Merchant Marine Act of 1920 (41 Stat. 988, et seq. [Comp. St. Ann. Supp. 1923, § 8146¼ et seq.]) was in force. By section 4 of that act (Comp. St. Ann. Supp. 1923, § 8146¼aa) all vessels like the Latham, except such as in the opinion of the President were required by another branch of the government service, were transferred to the Shipping Board. The following is section 12 of that act (Comp. St. Ann. Supp. 1923, § 8146¼eee):

"*Repair and operation of vessels until sale thereof.*—All vessels may be reconditioned and kept in suitable repair and until sold shall be managed and operated by the board or chartered or leased by it on such terms and conditions as the board shall deem wise for the promotion and maintenance of an efficient merchant marine, pursuant to the policy and purposes declared in sections 1 and 5 of this act; and the United States Shipping Board Emergency Fleet Corporation shall continue in existence and have authority to operate vessels, unless otherwise directed by law, until all vessels are sold in accordance with the provisions of this act, the provision in section 11 of the 'Shipping Act, 1916,' to the contrary notwithstanding."

By section 14 of that act (Comp. St. Ann. Supp. 1923, § 8146¼ff) provision was made for the withholding by the Shipping Board of funds derived from its activities for the purposes of the above set out section 12. The following is section 35 of that act (Comp. St. Ann. Supp. 1923, § 8146¼s):

"*Powers of board; how exercised.*—The power and authority vested in the board by this act, except as herein otherwise specifically provided, may be exercised directly by the board, or by it through the United States Shipping Board Emergency Fleet Corporation."

The contracts sued on are to be construed in the light of statutory provisions which were in force at the time they were made. By the law then in force the plaintiff was chargeable with notice that the Latham was not owned by the Fleet Corporation, that the reconditioning or repairing of it was a matter to be determined by the Shipping Board, that the Shipping Board was provided with funds to pay for such reconditioning or repairing, that in its own behalf the Fleet Corporation was not authorized to have Government owned vessels reconditioned or repaired, and that the Shipping Board was authorized to act through the Fleet Corporation. When the Latham, in the disabled condition indicated above, was put in the plaintiff's dry dock at the instance of representatives of the Fleet Corporation, and when the work on it, including that called for by the contracts sued on, was by the Fleet Corporation ordered to be done, it was quite apparent that that corporation, in doing so, was not exercising its authority to operate vessels, the only authority exercisable by it as a principal which was expressly granted by the above quoted provision of the statute which continued it in existence.

[5] Nothing contained in the orders in question is inconsistent with the conclusion that the Fleet Corporation in giving them was acting in its capacity as agent of the Shipping Board. That it was acting as such agent, and not in its own behalf as a principal, is quite clearly indicated by the following provision of each of the orders: "Work to be * * * charged to the account of the United States Shipping Board, to be audited and checked by representatives of the comptrollers; statement covering the cost to be rendered to the Division of Construction and Repair at New Orleans, La." Plaintiff's acceptance of orders containing that provision evidence its agreement to look to the Shipping Board for payment for the labor and material called for by those orders, and is inconsistent with the contracts sued on having the effect of obligating the Fleet Corporation to pay the amounts promised to be paid. We are of opinion that the language of the written instruments evidencing

the contracts sued on, when that language is considered in the light of statutory provisions determining by whom the work and labor called for by those contracts may be authorized to be done, and in the light of the facts that the Fleet Corporation, acting in its own behalf as principal, was without authority to have that work done, but could legally act for the Shipping Board in having it done, requires the conclusion that the Fleet Corporation in making those contracts acted as the agent of the Shipping Board, and did not thereby obligate itself to pay for the material and labor called for by those contracts. Under the laws which were in force when those contracts were made, the Fleet Corporation could act in two entirely different capacities, as a private corporation carrying on business in its own name as a principal, and as the agent of the Shipping Board, an administrative branch of the government. It has been settled that the Fleet Corporation is subject to suit and judgment against it on a contract made in its own name as principal in the conduct of a business in which it is authorized to engage. Sloan Shipyards v. U. S. Fleet Corp., 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762.

[6] It is equally well settled that an agent of the government or of a branch thereof is not personally liable on a contract made on behalf of his principal while acting within the scope of his authority. Hodgson v. Dexter, 1 Cranch. 345, 2 L. Ed. 130; Parks v. Ross, 11 How. 362, 13 L. Ed. 730; Sheets v. Selden's Lessee, 2 Wall. 177, 187, 17 L. Ed. 822; Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 40 L. Ed. 599; District of Columbia v. Camden Iron Works, 181 U. S. 453, 460, 21 S. Ct. 680, 45 L. Ed. 948; Astoria Marine Iron Works v. United States Ship. Board (D. C.) 295 F. 415. The contracts sued on being such as properly could be made by the Shipping Board through its agent, the Fleet Corporation, the following statement made in the opinion in the case of Parks v. Ross, supra, with reference to contracts entered into by an agent of the government, is pertinent: "As regards him the rule is that he is not responsible on any contract he may make in that capacity, and wherever his contract or engagement is connected with a subject fairly within the scope of his authority, it shall be intended to have been made officially, and in his public character, unless the contrary appears by satisfactory evidence of an absolute and unqualified engagement to be personally liable."

We think that the averments of plaintiff's petition as it was amended, excluding statements of mere conclusions of the pleader and allegations not legally provable by plaintiff, show that the Fleet Corporation, in giving the alleged orders for material and labor, was acting in its capacity as an agent of the Shipping Board, and that the plaintiff by complying with those orders did not become entitled to hold the Fleet Corporation liable for the amount which became payable as a result of such compliance. It follows that plaintiff's amended petition was subject to demurrer on the above-mentioned ground, and that the court erred in ruling otherwise.

Above-stated conclusions involve the further conclusion that the record in this case does not present the question whether the Fleet Corporation would or would not have been subject to suit and judgment against it for the alleged breach of the contracts sued on, if in making those contracts it had acted in its own behalf as principal, and not as agent of the Shipping Board.

Because of the above-mentioned error, the judgment is reversed, and the cause is remanded.

Reversed.