FARMERS STATE BANK OF PLYMOUTH, APPELLANT, V.
BANK OF PLYMOUTH ET AL., APPELLEES.

FILED FEBRUARY 6, 1931. NO. 27552.

*Burkett, Wilson, Brown & Wilson, W. J. Moss* and *Melvin Moss,* for appellant.

*Sanden, Anderson, Laughlin & Gradwohl* and *John C. Hartigan, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PER CURIAM.

This is an action for breach of a contract by the terms of which plaintiff purchased the assets and good will of defendant bank.

In substance, plaintiff alleged that defendants did not turn over all of the assets of the defendant bank, but wrongfully withheld and retained assets equal in amount to the surplus and undivided profits carried on the books of the defendant bank at the time the contract was signed.

Defendants denied withholding any assets, and averred

that at the time of the delivery of the contract there were no surplus and undivided profits in defendant bank. The trial resulted in a verdict and judgment thereon for defendants. Plaintiff has appealed.

The contract of sale was signed February 18, 1928, by the directors of the respective banks, and was left in possession of one Davis, a state bank examiner. The contract, among other things, contained the following provisions:

"The vendor agrees to furnish the purchaser a good abstract of title, to execute and deliver to purchaser a good and sufficient warranty deed to said property on or before ninety days (90) and to deliver possession February 20, 1928. * * * Worthless paper, as agreed upon, is to be removed from the assets of the Bank of Plymouth and cash put in therefor."

Examination of the note pouch of defendant bank did not occur until the 20th of February, when an agreement was reached as to the amount of worthless paper. Late in the afternoon of that day the contract was delivered; plaintiff's directors signed and delivered notes representing the purchase price, and received from defendants what the latter terms an "inventory" and the former merely a "receipt." This written instrument was signed by the respective cashiers of the two banks. This written statement is, in part, as follows:

"List of the furniture and fixtures of the Bank of Plymouth sold to the Farmers State Bank of Plymouth, Nebraska. (Here follow items of furniture, fixtures, etc.)

"Statement of the liabilities and resources as of February 20, 1928, when turned over to The Farmers State Bank of Plymouth, Neb.

"Liabilities. * * * Surplus 00. Profits 00. Discount 00. Exchange 00. (Here are listed deposits of various accounts in the bank, with total liabilities $264,817.87.)

"Resources. (Then follows list of the resources, totaling $264,817.87.)

"We hereby acknowledge the correctness of this state-

ment with the books of the Bank of Plymouth, as of February 18, 1928."

Signed by the respective cashiers.

There is evidence that at the time the contract was being drawn there was a conversation had with respect to the surplus and undivided profits of the vendor bank, and in which it was stated that surplus and undivided profits (assets representing the amount) were not to be transferred in the contract of sale, and evidence also that assets to the amount of these items were withdrawn from the vendor bank before the contract was delivered and before possession was surrendered. The contract, while dated February 18, did not become effective, and neither of the parties was bound, until the amount of worthless paper was agreed upon and there was a delivery of the contract. This did not occur until late in the afternoon of February 20. At that time assets of the vendor bank had been withdrawn to an amount equaling surplus and undivided profits. If the contract is to speak and be effective as of the 18th of February, then, in terms, it described all of the assets of the vendor bank. By its terms, however, it was not to be effective until the 20th of February. If the contract is to speak as of the date of February 20 when it was delivered, then there were no surplus and undivided profits.

Where a contract, by its terms, shows that it is not to be operative until a day subsequent to its date and is not delivered until a subsequent date, parol evidence is admissible to show that the contract was not completed and executed until a date subsequent to that which it bears.

In *United States v. Le Baron,* 19 How. (U. S.) 73, it was held: "A deed speaks from the time of its delivery, not from its date." In the body of the opinion, quoting from another case, it was said (p. 75): "A lease, bearing date on the 26th of May, to hold for three years 'from henceforth,' was delivered on the 20th of June. It was resolved, that 'from henceforth' should be accounted from the day of delivery of the indentures, and not from the

day of their date; for the words of an indenture are not of any effect until delivery—*traditio loqui facit chartam.*" And in the opinion it was further said (p. 76): "And the modern case of *Steele v. March,* 4 B. and C. 272, is to the same point. A lease purported on its face to have been made on the 25th of March, 1783, habendum from the 25th of March *now* last past. It was proved that the delivery was made after the day of the date, and the Court of King's Bench held that the word *now* referred to the time of delivery, and not to the date of the indenture." The holding in the *Le Baron* case was approved and followed in the more recent case of *District of Columbia v. Camden Iron Works,* 181 U. S. 453, 45 L. Ed. 948, wherein it was held, in effect, that it is competent to show by parol that a contract was finally executed and delivered at a date subsequent to that shown on its face.

Under this rule, if the contract was not to be operative until February 20, parol evidence was admissible to show what assets the vendor bank had at that time, and to show that at the time of the negotiations it was agreed that assets, representing the amount of the surplus and undivided profits, were not to be included and were to be withdrawn from consideration.

Plaintiff in its brief states: "These pleadings raised the following questions:

"1. Whether the contract of sale included under the term assets the surplus and undivided profits in the bank at the time contract, exhibit A, was signed.

"2. Whether this surplus and undivided profits had been turned over to the purchaser or taken out of the bank after the signing of the contract and before the assets were turned over."

Really, the only question in controversy is the first question. An examination of the entire record leads us to the conclusion that this question was one of fact for the jury, and their finding thereon is conclusive.

There are numerous alleged errors in the instructions given and refused. Plaintiff requested an instruction for

a directed verdict, which was refused, and asserts this was error. We do not agree. Under the evidence, there was a question of fact for the jury to determine.

With respect to the instructions given and other instructions requested, plaintiff's rights, we think, were thoroughly and fully protected by the instructions which the court gave. These instructions were much more favorable to plaintiff than were warranted under the record.

We find no error prejudicial to the plaintiff. Judgment AFFIRMED.