COUNTY OF CAYUGA, Claimant, *v.* THE STATE OF NEW YORK.

Claim No. 15590.

(State of New York, Court of Claims, July, 1920.)

Jurisdiction — of Court of Claims — claims — municipal corporations — towns — highways — Laws of 1918, chap. 657.

   The rule that money paid under a mistake of law may not be recovered back does not apply to a municipality or other public body. (Pp. 520, 521.)

   This rule of non-application is based upon the principle that such payment is not voluntarily made by the municipality but by its agent in excess of his authority and in defiance of the rights of the municipality. (Id.)

   The enabling statute (Laws of 1918, chap. 657), while creating no liability, confers jurisdiction upon the Court of Claims to hear, audit and determine the claim of the county of Cayuga against the state for moneys alleged to have been paid by the county for road construction in certain cases where it is alleged that the expense thereof was chargeable to the state, and it is no defense that the claim being a public one instead of a private one the court had no jurisdiction, and upon proper proof the claim will be allowed.

CLAIM for the construction of highways.

Frank S. Coburn, for claimant.

Henry P. Nevins, deputy attorney-general, for State of New York.

MORSCHAUSER, J.   The county of Cayuga filed a claim against the state, alleging that the county treasurer of Cayuga county paid to the state the sum of $21,636.01 as a part of the cost of construction of the Fleming-Scipio, Fleming-Auburn and Wyckoff, and the Groton-Locke and Moravia state highways in the county of Cayuga.   It is alleged in this claim that this amount was the share which the towns of Locke, Moravia, Fleming and Owasco in said county were called upon to pay under the provisions of the Highway Law of the state of New York towards the cost of construction of said highways.   It further alleges that after the payments were made, under the construction given by the Court of Appeals to the Highway Law (Laws of 1912, chap. 63), the county of Cayuga after April 2, 1912, was not able lawfully to collect from any town in which the state highways were under construction any amount to meet any such part of such construction, and that the town was not liable for part of such cost of construction; that notwithstanding the law, between April 2 and April 4, 1914, the state highway commission drew upon the county treasurer of Cayuga county from time to time for the share of the expense of the construction of the above roads and the county treasurer paid over to the state the sum of $21,636.01, and that this amount which was paid to the state was an obligation of the state of New York under the Highway Law as amended and not an obligation on the part of the county of Cayuga.

The claim was filed and the facts as alleged in said claim were established upon the trial.   The case was originally tried before the late lamented Charles R.

Paris, a judge of this court, who heard the evidence, but before the case was decided by him he died and the matter was submitted on the record by stipulation to me for decision. On the trial the facts as alleged in the claim were established and it also appeared on the trial that of the amount claimed by the county against the state $6,366.50 had been paid to the county by the towns of Fleming and Owasco and that such payments were voluntary payments.

The legislature passed an enabling act, chapter 657 of the Laws of 1918, which reads as follows:

" *The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

" SECTION 1. Jurisdiction is hereby conferred upon the court of claims to hear, audit and determine the claim of the county of Cayuga against the state for moneys alleged to have been paid by such county for road construction in certain cases where it is alleged that the expense of such construction was chargeable to the state, and to make an award thereon and render judgment against the state in favor of the claimant for such sum as the court may determine to be justly due, notwithstanding the failure of such county to file notice of intention to file such claim within the time prescribed by section two hundred and sixty-four of the code of civil procedure. The state hereby consents to have its liability on such claim determined. Nothing herein contained shall be held as admitting the validity of such claim or any part thereof upon the part of the state, nor as waiving any defense of the state thereto, except that such claim shall not be impaired or defeated on account of the failure to file such notice of intention. The jurisdiction conferred by this act shall not attach unless the claim be filed within six months after this act takes effect.

" § 2. This act shall take effect immediately."

The state in defense of the claim asserts *first* that the claim being a public one instead of a private one this court has no jurisdiction as the jurisdiction conferred upon this court, section 264 of the Code, limits the power of the court to hear, audit and determine private claims only and cites as an authority for this proposition section 264 of the Code and *Matter of County of Cayuga* v. *State of New York,* 153 N. Y. 279. *Second,* that the county of Cayuga, being an integral part of the state itself, cannot maintain an action against the state, citing the case of *County of Albany* v. *Hooker,* 204 N. Y. 1, and further that the payments by the county of Cayuga being purely voluntary for that reason it cannot recover and, therefore, asks that the claim be dismissed.

The defense that the payment was a voluntary one does not apply to a municipality. While it is a well-settled principle of law that where a voluntary payment is made because the error on the part of the person paying was one of law and not of fact, the person making such voluntary payment cannot recover (*Silliman* v. *Wing,* 7 Hill, 159; *National Bank of Ballston Spa* v. *Board of Supervisors,* 106 N. Y. 488; *New York & Hudson Railroad Co.* v. *Marsh,* 12 id. 308; *Flower* v. *Lance,* 59 id. 609), this rule has no application to a municipality or other public body. *Village of Fort Edward* v. *Fish,* 156 N. Y. 364; *Donohue* v. *City of New York,* 10 Hun, 37; *Board of Supervisors* v. *Ellis,* 59 N. Y. 620; *Ward* v. *Barnum,* 10 Col. App. 496; *Wayne Co.* v. *Reynolds,* 126 Mich. 231; *Bayne* v. *United States,* 93 U. S. 642. This rule of law is based upon the principle that such a payment is not voluntarily made by the municipality, but by its agent, in excess of his authority and in defiance of its rights. It is not the act of the municipality itself, but one who assumes to act for it without authority.

In *People* v. *Fields,* 58 N. Y. 491, 505, the court in speaking of this rule says: " The payment was made and received without any lawful power in the comptroller to make it. The defendant is chargeable with knowledge of this. It was a payment by an agent, who had no authority as such, to make it. It was, then, no payment by the principal in mistake of law or ignorance of facts. The principal, in legal view, had no part in the payment, and it was made against its will. It was equivalent to an appropriation by the appellant of the moneys to his own use, with the acquiescence and help of the officer of the city, who was authorized to pay them out no otherwise than in accordance with law. He having made the payment unlawfully, it was an act not within the scope of his agency and does not bind his principal." There is for these reasons a right of action against the state to recover the whole or part of these moneys. Any payment made by such municipality is the unauthorized act of the agent of such municipality and cannot be considered and is not a voluntary payment and an action lies at the suit of the municipality to recover back the money so paid. This is the law not only in this state but in many other jurisdictions. Therefore, the payment by the county of the moneys to the state was not a voluntary payment and is no defense on the part of the state to the allowance of the claim.

The state also asserts that the payment on the part of the towns to the county of $6,366.50 being voluntary, the towns could not recover over against the county and at least to that extent the claim should not be allowed, but the rule of law above cited and the cases apply as well to towns as to other municipal bodies and, therefore, such payment was not a voluntary one and the towns can recover the moneys so paid.

The state also asserts that the county, being an integ-

ral part of the state itself, cannot maintain an action against the state and that the claim being a public one instead of a private one this court has no jurisdiction to hear the same. While it is a fundamental principle of law that the state in consequence of its sovereignty is immune from prosecution in its own courts it is also a well-recognized principle of law that the state may through its legislature confer jurisdiction upon tribunals to hear, try and determine claims against it and also assume liability, and it also may waive the defense that the county has no capacity to sue and by legislative enactment allow one of its municipalities to sue it and confer upon courts jurisdiction to hear, try and determine such claim.

We think that the legislature has by chapter 657 of the Laws of 1918 not only conferred jurisdiction upon this court, but has consented by that act to have its liability determined by this court. The jurisdiction conferred upon this court by said act is not only to hear, audit and determine the claim of the county of Cayuga against the state for moneys alleged to have been paid by said county for road construction in certain cases where it is alleged that the expense of such construction was chargeable to the state and to make an award thereon and render judgment against the state in favor of the claimant for such sum as the court may determine to be justly due, but in the act the legislature distinctly states: " The state hereby consents to have its liability on such claim determined." Said act grants such jurisdiction notwithstanding the failure of such county to file a notice of intention to file such claim within the time prescribed by section 264 of the Code of Civil Procedure, and further provides: " That nothing herein contained shall be held as admitting the validity of such claim or any part thereof upon the part of the state, nor as

waiving any defense of the state thereto, except that such claim shall not be impaired or defeated on account of the failure to file such notice of intention," and then it provides that " The jurisdiction conferred by this act shall not attach unless the claim be filed within six months after this act takes effect," the state's contention being that this act should be so construed that the intent of the legislature was to simply waive the filing of the claim within the time prescribed by section 264 of the Code and that it retained by the act any defense that existed and the state did not in any way admit the validity of such claim or any part thereof.

We think that the legislature by this act intended to confer jurisdiction upon this court to hear, try and determine the claim and allow an equitable decision to be made and that the exception in the act, which reads: " Nothing herein contained shall be held as admitting the validity of such claim or any part thereof upon the part of the state, nor as waiving any defense of the state thereto," must be read in connection with the rest of the act and especially that part which states that " the state hereby consents to have its liability on such claim determined."

The language of the act which reads " nor as waiving any defense of the state thereto " we think means defense in the ordinary acceptance of the word " defense." Defense as defined is that which admits the allegation set up as a cause of action but asserts new matter by way of avoidance. *Gilbert* v. *Cram,* 12 How. Pr. 455; *Stoddard* v. *Onondaga Annual Conference,* 12 Barb. 373. Defense is new matter which consists of some fact which plaintiff is not bound to prove to establish his cause of action, and which goes in avoidance or discharge of the cause of action alleged in the complaint. *Meissner* v. *Brennan,* 39 N. Y. St. Repr.

277. To constitute a defense such new matter must allege all those facts which, when the cause of plaintiff is admitted or proved, defendant must prove in order to defeat a recovery. *Morrell* v. *Irving F. Ins. Co.,* 33 N. Y. 429; *Beaty* v. *Swarthout,* 32 Barb. 293. The word " defense " in the act of the legislature conferring jurisdiction in this case upon this court, we think did not mean an objection to the jurisdiction of this court or the objection to the claimant's capacity to sue, but we believe that the intention of the legislature was, reading the whole act together, that the legislature intended to confer jurisdiction upon this court to hear the claim and to waive any question as to the capacity of the municipality to sue and to waive the objection that the municipality had no capacity to sue and intended to have this court determine the entire matter on the merits. The act not only confers jurisdiction but distinctly states: " The state hereby consents to have its liability on such claim determined." This language would be absolutely meaningless if the strict and narrow construction asserted by the state of the act prevailed. Reading the entire act we think it means that the court should hear, try and determine the claim whether public or private and also that the county shall have the capacity to sue and there shall be a fair and equitable decision upon the merits, and that the state intended to assume liability, if in equity it should be found that it should refund the money, and we think that that was the purpose of the act.

If, as contended for by the state that the Enabling Act only intended to give the county additional time to file the claim or the notice of intention, the legislature could have said so in much fewer words. When it conferred jurisdiction on this court to hear and determine the claim and also expressly asserted in the

act " The state hereby consents to have its liability
on such claim determined " it is very clear that the
act was intended to allow the county to present its
claim and if in justice and equity it should be paid the
state intended to waive the immunity that it had.   It
would be idle for the legislature to pass this Enabling
Act if it intended that its purpose was only to extend
the time for the claimant to file its claim or notice of
intention and to reserve the right to raise the tech-
nical objection that this court had no jurisdiction
because its jurisdiction is limited to hear private
claims, or that the county had no legal capacity to sue
the state.   We think the more reasonable construction
of the Enabling Act to be that the legislature intended
to confer jurisdiction upon this court and to waive
the technical objection that the county had no capacity
to sue and that the purpose of the act was that, if in
justice and equity the state should refund the moneys
paid to it by the claimant, the state was willing to do
so after a trial on the merits of this question, and the
state was willing to submit to such a trial and has
selected this tribunal to determine that question.

It has been the rule and practice of the legislature
in many instances that although the state is immune
and is not legally liable it can and does recognize
claims founded in equity and justice.   As was said in
*Oswego & Syracuse Railroad Co.* v. *State of New York,*
226 N. Y. 351, and also in *County of Ulster* v. *State,*
177 id. 189: " The situation does not prohibit the
recognition of claims which have their roots in equity
and justice."   In the case of *Lehigh Valley R. R. Co.*
v. *Canal Board,* 204 N. Y. 475, Judge Cullen, writing
the opinion for the court, said: " In *Town of Guilford*
v. *Supervisors of Chenango County* (13 N. Y. 143) the
broad doctrine was laid down: ' The legislature is not
confined in its appropriation of the public moneys, or

of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the state. It can thus recognize claims founded in equity and justice in the largest sense of these terms or in gratitude or charity.' That doctrine (as to gratitude and charity) was abrogated by the constitutional amendments of 1895 already quoted (referring to Constitution, art. III, § 19). From that time public moneys, whether of state or municipality, could no longer be expended in the exercise of gratitude or charity. But the amendment did not prevent the legislature from recognizing claims founded on equity and justice, though not such as could have been enforced in a court of law if the state had not been immune from suit. The cases of *Cole* v. *State of New York* (102 N. Y. 48) and *O'Hara* v. *State of New York* (112 N. Y. 146) are clear authorities to this effect.''

It is, therefore, very evident that the Enabling Act was intended by the legislature not only to confer jurisdiction upon this court but also intended to waive the technical objection that the county as an integral part of the state could not sue the state. If the language of the Enabling Act which declared: '' Nothing herein contained shall be held as admitting the validity of such claim or any part thereof upon the part of the state, nor as waiving any defense of the state thereto,'' intended that this objection should be raised, then the Enabling Act would be a mere nullity and mean nothing at all, as the legislature, when it passed this Enabling Act, must have understood that this tribunal as a Court of Claims under section 264 had no jurisdiction to hear a public claim, but only a private one, and must have understood that the county could not sue it, and the passing of the Enabling Act must have been for the purpose and was intended to allow this tribunal to dispose of the claim made by

the county upon the principles of equity and justice, and the state evidently intended by the Enabling Act to have it so disposed of, and the exception which was stated in the Enabling Act was intended only to reserve to itself such defense as it might equitably have as to the matter involved.

The legislature did not intend by the Enabling Act to create a liability, but intended to have that question determined by this court.

It has been recently decided in the case of *Town of New Lebanon* v. *State of New York,* 111 Misc. Rep. 310, which was a claim by a municipality, that the Court of Claims has no jurisdiction to try a claim made by a municipality against the state, for the reason that the jurisdiction of the Court of Claims, by section 264 of the Code of Civil Procedure, is limited to hear and determine private claims, and the court has no jurisdiction to hear and determine public claims, and it was also decided in that case that a claim by a municipality cannot be made against the state for the reason that it is an integral part of the state and, therefore, could not sue the state, and that ruling would apply to this case, as the county of Cayuga is a muncipality and an integral part of the state, but we think the Enabling Act, chapter 658 of the Laws of 1918, permits the county of Cayuga to bring such an action against the state and especially confers jurisdiction upon this court to hear, try and determine the claim so to be presented under said Enabling Act.

The claim of the claimant should be allowed.

ACKERSON, P. J., concurs in result.

Claim allowed.