UNITED STATES OF AMERICA, Appellant, *v.* PETER DE N. BROWN, SR., Trading under the Name of PETER BROWN JUN. & COMPANY, Respondent.

**Limitation of actions — attachment — Federal government — attachment in action by United States brought in State court improperly set aside — rights of United States not affected by Statute of Limitations.**

1. A warrant of attachment, granted in an action brought in our courts by the United States to recover an overpayment made by it to the defendant as hire under a charter party executed by the United States Shipping Board Emergency Fleet Corporation, is improperly set aside because the papers show on their face that the claim is barred by our Statute of Limitations, where it appears, from such papers, that in making this particular charter the Fleet Corporation acted merely as agent; that the United States was the principal and as its agent the corporation chartered the vessel from defendant, retained it, paid the charter hire and made this overpayment and demanded reimbursement which was refused.

2. The truth of all the facts stated must be assumed, and on such facts the United States may maintain the action in its own right, not as assignee or trustee of the Fleet Corporation, and its rights are not affected by our Statute of Limitations.

United States v. Brown, 220 App. Div. 692, reversed.

(Argued November 21, 1927; decided January 17, 1928.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 3, 1927, which affirmed an order of Special Term granting defendant's motion to vacate a warrant of attachment and setting aside a levy made thereunder.

The following question was certified: " Upon the entire record on appeal herein, is the United States of America, the plaintiff-appellant herein, barred by the Statute of Limitations of the State of New York? "

*Charles H. Tuttle, United States Attorney (Edgar G. Wandless* and *J. C. Hawkins* of counsel), for appellant. The United States of America is not barred by the Statute of Limitations of the State of New York. The general rule that the United States is not bound by any Statute of Limitations in a suit brought by it as a sovereign government to enforce a public right, or to assert a public interest, is firmly established. ( *United States* v. *Minnesota,* 270 U. S. 181; *Davis* v. *Corona Coal Co.,* 265 U. S. 219; *Grand Trunk Western Ry. Co.* v. *United States,* 252 U. S. 112; *C. & D. Canal Co.* v. *United States,* 250 U. S. 123; *Stanley* v. *Schwalby,* 147 U. S. 508; *United States* v. *Insley,* 130 U. S. 263; *United States* v. *Beebe,* 127 U. S. 338; *United States* v. *Nashville, etc., Ry. Co.,* 118 U. S. 120; *United States* v. *Thompson,* 98 U. S. 486; *The Messenger,* 14 Fed. Rep. [2] 147; *United States* v. *Porto Rico Fruit Union,* 12 Fed. Rep. [2] 961.) The chartering of the steamship *Nordlys* was an act of the United States in its sovereign capacity for war purposes. ( *United States* v. *Porto Rico Fruit Union,*

12 Fed. Rep. [2] 961; *The Pesaro,* 271 U. S. 562; *The Messenger,* 14 Fed. Rep. [2] 147.)

*Edwin S. Murphy* and *John M. Woolsey* for respondent. The United States of America occupies no better position in this action than would be that of the Fleet Corporation as plaintiff. (*Triangle Radio Supply Co. v. De Forrest Radio, etc., Co.,* 210 App. Div. 87; *Diefenthaler v. Mayor, etc.,* 111 N. Y. 331; *Ingersoll-Rand Co. v. U. S. S. B. E. Fleet Corp.,* 195 App. Div. 838; *United States v. Strang,* 254 U. S. 491; *Sloan Shipyards Corp. v. U. S. S. B. E. Fleet Corp.,* 258 U. S. 549; *Gould Coupler Co. v. U. S. S. B. E. Fleet Corp.,* 261 Fed. Rep. 716; *Bank of U. S. v. McKenzie,* 2 Fed. Cas. 718; *U. S. v. Buford,* 3 Pet. [U. S.] 12; *U. S. v. Beebe,* 127 U. S. 338.) The United States is not here asserting any right vested in it as a sovereign government. (*United States Bank v. Planters' Bank,* 9 Wheat. [U. S.] 904; *Bank of the United States v. McKenzie,* 2 Fed. Cas. 718; *Standard Oil Co. of N. J. v. United States of America [The Llama],* 267 U. S. 76; *C. & D. Canal Co. v. United States,* 250 U. S. 123; *Seaboard Air Line Ry. v. United States,* 261 U. S. 299; *Lloyd v. City of New York,* 5 N. Y. 369; *Missano v. Mayor,* 160 N. Y. 123; *Matter of Rapid Transit R. R. Comrs.,* 197 N. Y. 81; *Oakes Mfg. Co. v. City of New York,* 206 N. Y. 221; *Matter of City of New York,* 127 Misc. Rep. 710.) This action is barred by the New York Statute of Limitations. (*Diefenthaler v. Mayor, etc.,* 111 N. Y. 331; *Model Building & Loan Assn. v. Reeves,* 236 N. Y. 331; *State of New York v. County of Kings,* 125 N. Y. 312; *People v. Journal Co.,* 213 N. Y. 1; *United States v. Prioleau,* L. R. 2 Eq. 659; *United States v. Wagner,* L. R. 2 Ch. 582; *Rothschild v. Portugal,* 3 Y. & Coll. 594; *Matter of United States,* 96 N. Y. 227; *Matter of Merriam,* 141 N. Y. 479; 163 U. S. 625.)

ANDREWS, J. This action is brought in our courts by the United States to recover an overpayment claimed to

have been made by it in 1918, to the defendant, as charter hire, upon a certain charter party. A warrant of attachment has been set aside solely upon the ground that upon their face the moving papers show that the claim is barred by our Statute of Limitations. This is the one question for our consideration.

In 1916 this country was confronted with a crisis. There were disputes with Great Britain. There were disputes with the German Empire. At some time in some way it became probable that we would need to defend our rights by arms. There was strong sentiment that we should prepare for the future. One of the essential elements for any such reasonable preparation was the strengthening of our navy and our mercantile marine. So the Shipping Act (39 U. S. Statutes at Large, 728) was passed " for the purpose of encouraging, developing, and creating a naval auxiliary and naval reserve and a merchant marine to meet the requirements of the commerce of the United States with its territories and possessions and with foreign countries; to regulate carriers by water engaged in foreign and interstate commerce of the United States, and for other purposes."

The President was authorized to appoint five members of a so-called " United States Shipping Board." This Board might, with his approval, construct, purchase or charter vessels suitable for naval or military purposes. It might also use, lease, sell and charter vessels to citizens for commercial purposes, subject to the right of the President to retake possession if required for military or naval uses. And again for use in commerce it was authorized to form one or more corporations to purchase, build, charter and operate merchant vessels. The capital stock of these corporations was not to exceed in the aggregate $50,000,000. The United States might subscribe for all or a part of this stock and might thereafter sell it, provided that it at no time became a minority stockholder. The corporations might operate vessels com-

1:ercially but only if the Board could find no citizen who would do so on satisfactory terms, and only for five years after the end of the war if the United States remained a stockholder. Thereupon the corporation was to be dissolved. Its property was to revert to the Board, private stockholders, if any, being paid the fair value of their stock. The $50,000,000 was to be raised by the sale of bonds of the United States. Then follow many regulations affecting water-borne commerce.

Whether, and if so how and when our national government may put aside its sovereignty and engage in commercial ventures we do not discuss. Nor whether, if it may do so, without its express consent its rights, remedies and liabilities under its business contracts are measured by the same rules that govern private persons. There is no indication of such a theory when it is sued on policies of war risk insurance (*Standard Oil Co.* v. *United States,* 267 U. S. 76) nor where it operates merchant vessels (*Eastern Transportation Co.* v. *United States,* 272 U. S. 675). At least under this act, however, the Shipping Board was not engaged in ordinary commercial activities. It might build, purchase or charter vessels. Their title would be in the United States. It might contract on behalf of the State with individuals to operate them. Such contracts failing it might create a corporation for the same purpose. It is idle to say that Congress by this act committed the government to a mere business speculation. In view of threatened danger, resorting to the broad war powers confided to it, to guard the national safety and vital national interests, it made provision for ships required for military and naval purposes, or, should the need arise, to transport our troops, to feed our people, to continue our commerce. It was purely a war measure with no thought of profit. (*Berizzi Brothers Co.* v. *S. S. Pesaro,* 271 U. S. 562.)

War did come on April 6th, 1917. Eight days later the Board authorized the crea ion of the United States

Shipping Board Emergency Fleet Corporation. It was incorporated to purchase, contract, equip, charter and operate merchant vessels in the commerce of the United States. All its capital stock was held by the United States. Quick replacement of destroyed tonnage was then vital. Probably an official might not act with the speed required. An independent corporation, not limited by this statute or that, would have the necessary freedom of action. This seems to have been the thought of Congress. And so when in June large appropriations were made for an Emergency Shipping Fund (40 U. S. Statutes at Large, 182) and the President was authorized to buy or requisition ships, materials or plants, and to manage and dispose of ships as he might direct, he was also authorized to expend the moneys appropriated and exercise the powers conferred by an agent or agents. If one such agent should be the Fleet Corporation, the moneys turned over to it might be expended as were its other moneys.

On July 11th, in pursuance of the statute, the President did designate the Shipping Board and the Fleet Corporation as his agents for carrying out the powers conferred upon him.

Of all this we may take judicial notice, even of the incorporation of the Fleet Corporation, and of the fact that the United States became its sole stockholder. Unlike the ordinary private corporation its public character and the historical quality of its acts, dispense with the need of such formal testimony as usually might be required. It is against such a background that we must view the facts appearing in the papers before us.

It is clear that the Fleet Corporation acts in two capacities. Notwithstanding the ownership of its stock by the United States, it is a private corporation. As such it is a distinct entity. It may make contracts and transact the business for which it is organized. It may sue and be sued. Then it is subject to the Statute of

1928.]          Opinion, per ANDREWS, J.          [247 N. Y. 211]

Limitations. (*Ingersoll-Rand Co.* v. *U. S. S. B. E. Fleet Corp.*, 195 App. Div. 838; *U. S.* v. *Strang*, 254 U. S. 491; *Sloan Shipyards Corp.* v. *U. S. Fleet Corporation*, 258 U. S. 549; *Gould Coupler Co.* v. *Fleet Corp.*, 261 Fed. Rep. 716.) But when a recovery may be had and a judgment enforced against it, again we do not discuss. Here that question is not involved. Further under the act of 1917 and the proclamation it had extraordinary powers. Under them it acts as an agency of the government for the prosecution of the war. It expends moneys of the United States appropriated for that purpose, on behalf of the government and to serve its ends.

It is evidently the theory of the plaintiff that in making this particular charter it so acted merely as agent and not in its corporate capacity. The United States was the principal. We are told that as agent of the United States it chartered the *Nordlys* from the defendant in September, 1918; as agent it retained it until July, 1919; that as such agent it paid the charter hire and made this overpayment; that as agent it has demanded reimbursement which was refused, and to recover which, not it but the United States, brings this action in our courts. Nothing in the statutes or the proclamation makes such a theory untenable as a matter of law. (*Belknap* v. *Schild*, 161 U. S. 10, 17; *Dugan* v. *United States*, 3 Wheat. 172.)

On this motion the truth of all the facts stated must be assumed. Apparently in executing the charter the Fleet Corporation appears as principal. Even so, the contract may have been made by it, acting in an official capacity as agent of the government. We have simply a case where the United States seeks to recover an overpayment made from its moneys on a contract made in fact by it. Whether it will ultimately succeed is not the question.

If the facts pleaded are sustained the government is " the real contestant party to the   *   *   *   property

\* \* \* in controversy." It has an interest in the suit. It has something " to gain from the relief prayed for " and something " to lose if the relief is denied." It is not " a mere formal complainant." (*United States* v. *Beebe,* 127 U. S. 338.) It sues in its own right, not as assignee or trustee of the Fleet Corporation. It clearly might sustain such an action, again assuming the facts stated. (*Erickson* v. *United States,* 264 U. S. 246.)

If the United States may maintain this action to recover public moneys, appropriated for war purposes, paid out by its agent, then its rights are not affected by our Statute of Limitations. (*United States* v. *Minnesota,* 270 U. S. 181; *Davis* v. *Corona Coal Co.,* 265 U. S. 219; *Dupont de Nemours & Co.* v. *Davis,* 264 U. S. 456.) It is not a case where the government, wishing a recovery only authorized by a State statute, seeks to avoid a condition upon which such recovery is permitted. Nor is it a case where another State or a foreign government comes to us for relief. It may also be observed that as the defendant seems to reside in Copenhagen, it is by no means clear that our six-year Statute of Limitations has any application even were the plaintiff an individual. (Civ. Prac. Act, sec. 55.) The question, however, has not been raised. It seems to be assumed that in Denmark no longer time is given for the assertion of a claim than here.

The order of the Appellate Division and that of Special Term should be reversed and the motion to vacate attachment denied, with costs in all courts, and the question certified should be answered in the negative.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.