## HARWOOD v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

District Court, D. Connecticut. April 7, 1928.

No. 1669.

1. Release ⚖➡55—Party charging fraud in contract of release has burden of proof.

Party charging that contract of release is tainted with fraud has burden of proof thereof.

2. Bankruptcy ⚖➡151—Contract of release, not fraudulent against corporation, did not become so after bankruptcy because innocent creditors suffered consequences.

Contract of release, which was not fraudulent as against corporation, did not become so because innocent creditors suffered consequences after bankruptcy of corporation; trustee's rights being only derivative and no more

than those bankrupt corporation itself would have in case bankruptcy had not intervened.

3. Principal and agent ⚖➡136(1)—Agency for United States when entering into contract constitutes complete defense as to personal liability.

Agency for United States, if proven, constitutes a complete defense as to personal liability under contract entered into while acting as such agency.

4. United States ⚖➡52½—United States Shipping Board Emergency Fleet Corporation held not personally liable under contract entered into solely as governmental agency (Act June 15, 1917 [Comp. St. § 3115⅛6d]).

United States Shipping Board Emergency Fleet Corporation, selected by the president under powers conferred by Act of June 15, 1917 (Comp. St. § 3115⅛6d), held not personally liable under contract entered into solely as a governmental agency in behalf of the United States.

In Equity. Suit by P. Leroy Harwood, as trustee in bankruptcy of the Groton Iron Works, against the United States Shipping Board Emergency Fleet Corporation, removed from state court. On exceptions to the master's report, filed by both parties. Defendant's exception sustained, and bill dismissed.

Charles B. Waller, of New London, Conn., William L. Day, of Cleveland, Ohio, and Herbert B. Lee, William A. Barber, H. Starr Giddings, and William H. Griffin, all of New York City, for plaintiff.

Edwards, Murphy & Minton and Franklin H. Mills, all of New York City, for interveners.

John Buckley, U. S. Atty., of Hartford, Conn., and Chauncey G. Parker and Henry F. Parmelee, Sp. Asst. Attys. Gen., for defendant.

THOMAS, District Judge. This matter is before the court on exceptions to the master's report filed by plaintiff, defendant, and various other parties in interest.

The suit was brought as an action at law in the superior court of Connecticut, removed to this court, and finally to the equity side of this court on a substituted bill of complaint seeking an accounting and decree for damages because of asserted breaches of contract for ship construction and relief from the legal effect of a release contained in the fifth and last of the contracts (Exhibit 5), dated March 26, 1920, asserted to have been secured from Groton Iron Works by fraud and misrepresentation, and repudiated and abandoned. The first separate defense asserts the release to be a complete defense to all alleged causes of action arising prior to the date of the release. The fourth separate

defense is a complete defense, asserting that the United States was the real party in interest; that the Fleet Corporation in making the contracts and carrying them out acted only as an agency of the government without personal liability.

The first and fourth separate defenses were severed and referred to a special master to take evidence and report the same and his findings. The special master held many hearings, took voluminous proofs, and, after hearing exceptions to his draft report, filed his report, to which exceptions are now taken, sustaining the first separate defense of accord and satisfaction as to the larger part of the cause of action which is asserted to have arisen prior to March 26, 1920, and overruling the fourth separate defense, which asserted a complete defense of no liability on the part of the Fleet Corporation.

[1] An examination of the elaborate and exhaustive briefs submitted in support of the exceptions fails to convince me that there was error in the master's findings with reference to the first separate defense of accord and satisfaction. As to this defense, he not only formulated the issues correctly, but I think that he has correctly determined them. Because the plaintiff charges that the contract of release upon which the defendant relies is tainted with fraud, the burden of proving this was upon the plaintiff. Indeed, it is upon this predicate that the jurisdiction of equity is involved to annul the release.

However, the master has found not only that the plaintiff has not sustained the allegations of the bill, but that the defendant has sustained the burden of proof on the issues raised by this defense. A question of fact was tried out before him. I have been confronted with no adequate reason for setting aside his findings as to the first separate defense. It is suggested and argued that the court is not bound by those findings, that they are advisory only, and that the court has power to disregard them. But the court also has the power to approve and confirm them, and, if the mere possession of power is a valid argument for its exercise, the arguments are balanced. These findings have indeed been attacked with considerable vehemence and loquacity, but in the welter of words, I have been unable to discover any adequate grounds for reversing them.

[2] There is one contention pressed by the plaintiff which perhaps requires special comment, and that is that the acts and conduct of those who represented the Groton Iron Works in its negotiations with the defendant should not conclude the creditors who are represented by the trustee. I have been referred to no precedent to sustain the contention. In the present litigation the trustee's rights are wholly derivative; he has no other rights than those the bankrupt corporation itself would have had if bankruptcy had not intervened. That which was not fraudulent against the corporation did not become so because innocent creditors suffer the consequences. Therefore the exceptions to the first separate defense are overruled.

### Fourth Separate Defense.

[3] As to this, I am unable to support the master's conclusions, for the reason that the fourth separate defense, alleging, in substance, that the defendant was acting as an agency of the United States, selected by the President under the powers conferred upon him by the Act of June 15, 1917 (Comp. St. § 3115⅛d), and that the United States is the real party in interest, and that this defendant did not assume to be and is under no personal liability to the plaintiff have been established by the evidence. Under the well-established principle stated by Marshall, C. J., in Hodgson v. Dexter, 1 Cranch, 345, 2 L. Ed. 130, such agency, if proved, is a complete defense. See, also, Parks v. Ross, 11 How. 362, 13 L. Ed. 730.

Pursuant to the power conferred upon the President by the Act of June 15, 1917, there issued an executive order, dated December 3, 1918, which reads as follows:

"By virtue of the authority vested in me by said laws, supplementing said order No. 2664, but in no way limiting or restricting the effect thereof, or of acts heretofore done in pursuance thereof, I do hereby delegate all the power and authority so vested in me, and so direct that * * * (1) The United States Shipping Board Emergency Fleet Corporation shall have and exercise all power and authority now vested in me by said laws with reference to any and all activities which may be directly or indirectly applicable to ship or plant construction."

It then, in a paragraph numbered (2), delegates certain powers to the Shipping Board and concludes as follows:

"(3) All acts heretofore done by said corporation or by said board, with reference, respectively, to the kinds of power or authority herein delegated to each, and which could have been properly done by me under such statutes or any of them, be, and they are hereby, ratified and confirmed.

"Woodrow Wilson.

"The White House, 3 December, 1918."

The first contract in this suit was executed June 15, 1917, the date of the passage and

approval of the Urgent Deficiencies Act (40 Stat. 182).

It seems clear that on that date the President could himself have properly entered into that contract for the construction of ships. It is also clear that everything done under the contract was done subsequent to the Act of June 15, 1917, when the President had full power and authority to do all of these things himself. It also seems clear that everything done pursuant to the contract of June 15, 1917, in relation to shipbuilding, either directly or indirectly, comes within the ratification clause of the executive order, because it provided that "all acts heretofore done by said corporation * * * with reference * * * to the kinds of power or authority herein delegated * * * are hereby ratified and confirmed."

The effect of this order was to make certain that everything done by the Fleet Corporation in connection with the construction of ships for the government was admitted by the government to be government work, and all acts of that nature were officially ratified and confirmed as such. The alleged cause of action set forth in the bill charged the defendant only with acts done as a governmental agency. If there had been any doubt about that, it was removed by executive ratification and confirmation.

It will serve no useful purpose to refer to the evidence offered on this fourth separate defense, but it is sufficient to say that the defendant properly met the burden which was upon it to prove facts which sustained its contention. The act of Congress authorized the President to construct ships only for the United States and for its war necessities, and he was the exclusive judge of such necessities. It follows that, when he delegated such powers to the Shipping Board Emergency Fleet Corporation, acting under such powers, it could only construct ships for the United States pursuant to the war policy of the United States to build ships; and this policy was the policy of the United States and not the policy of the Fleet Corporation.

Nor is it necessary to cite or discuss the many cases relied upon by both sides in support of their respective contentions, because, since the case was submitted, there have been at least two decisions which are regarded as determinative of the legal proposition involved.

On January 3, 1928, the Supreme Court of the United States decided United States Shipping Board Emergency Fleet Corporation v. Western Union Telegraph Co., 48 S. Ct. 198, 72 L. Ed. ——, and it was there held that the Fleet Corporation was entitled to the benefit of government rates for telegrams, not because it is an instrumentality of the government, but because it is a department of the United States, and as such only, was it entitled to the reduced rate. In the course of the opinion, Mr. Justice Brandeis said:

"The claim that the government rates do not apply to messages of the Fleet Corporation is rested in part upon the fact that it is, in form, a private corporation; in part upon the fact that it is an agency of the Shipping Board, as distinguished from a bureau or division; in part upon the fact that, to a considerable extent it is engaged in a business which involves competition with private shipowners. These arguments do not support the claim; but they make necessary a statement of the facts concerning the organization and activities of the Fleet Corporation. * * *

"Besides powers conferred upon the Fleet Corporation by the General Corporation Law of the District of Columbia (31 Stat. 1280 et seq., as amended), it was vested, by delegation from the President, with the powers conferred upon him by Act June 15, 1917. * * * These services of the Fleet Corporation were obviously of a public nature. It has never done any business, or conducted any operation, except on behalf of the United States."

Then follows a résumé of the history of the organization and operation of the Fleet Corporation, and an answer to the claims made by the Western Union which are, in part, the claims made by the plaintiff in the case at bar. All of those claims are answered by Justice Brandeis against the Western Union in the opinion to which reference is made, and, as I view it, the answers there apply here with equal force. The learned Justice then concludes:

"The Fleet Corporation is entitled to the government rate, not because it is an instrumentality of the government, but because it is a department of the United States within the meaning of the Post Roads Act."

The plaintiff cites and relies with assurance upon Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762, to sustain his contention that the Fleet Corporation was liable to be sued anywhere upon its contracts and for its torts, notwithstanding the fact that it was a federal agency and that its stock was taken entirely by the United States.

There is no inconsistency with the law of the Sloan Case and the law set forth in the Western Union Case. Admittedly suit can be brought against the Fleet Corporation, but it is a complete defense if it shows that it acted solely as a governmental agency in behalf of the United States. The defendant has shown this by evidence, and it is further supported by the Western Union Case. It is in this respect that the plaintiff fails to differentiate the law as set forth in the two cases discussed.

On January 17, 1928, the Court of Appeals of the state of New York decided United States v. Brown, 247 N. Y. 211, 160 N. E. 13, and it was held that there is nothing in the Shipping Act or in the President's Proclamation which makes untenable, as matter of law, the theory that the United States Emergency Fleet Corporation acted as agent for the United States in making the charter in question. On page 216 (160 N. E. 15), Judge Andrews said:

"On July 11th, in pursuance of the statute, the President did designate the Shipping Board and, the Fleet Corporation as his agents for carrying out the powers conferred upon him.

"(1, 2) Of all this we may take judicial notice, even of the incorporation of the Fleet Corporation, and of the fact that the United States became its sole stockholder. Unlike the ordinary private corporation, its public character and the historical quality of its acts dispense with the need of such formal testimony as usually might be required. It is against such a background that we must view the facts appearing in the papers before us.

"It is clear that the Fleet Corporation acts in two capacities. Notwithstanding the ownership of its stock by the United States, it is a private corporation. As such it is a distinct entity. It may make contracts and transact the business for which it is organized. It may sue and be sued. Then it is subject to the statute of limitations. * * * But when a recovery may be had and a judgment enforced against it, again we do not discuss. Here that question is not involved. Further under the act of 1917 and the proclamation it had extraordinary powers. Under them it acts as an agency of the government for the prosecution of the war. It expends moneys of the United States appropriated for that purpose, on behalf of the government and to serve its ends.

"It is evidently the theory of the plaintiff that in making this particular charter it so acted merely as agent and not in its corporate capacity. The United States was the principal. We are told that as agent of the United States it chartered the Nordlys from the defendant in September, 1918; as agent it retained it until July, 1919; that as such agent it paid the charter hire and made this overpayment; that as agent it has demanded reimbursement which was refused, and to recover which, not it but the United States, brings this action in our courts. Nothing in the statutes or the proclamation makes such a theory untenable as a matter of law. Belknap v. Schild, 161 U. S. 10, 17, 16 S. Ct. 443, 40 L. Ed. 599; Dugan v. United States, 3 Wheat. 172, 4 L. Ed. 362. * * *

"If the United States may maintain this action to recover public moneys, appropriated for war purposes, paid out by its agent, then its rights are not affected by our statute of limitations."

[4] As the evidence before the master shows that the Fleet Corporation sustained the burden of showing that it acted under the contract in suit solely as a governmental agency in behalf of the United States, it follows that under the decisions in the Western Union Case and the Brown Case, the defendant has established its fourth separate defense. My conclusion is supported by United States Fleet Corporation v. Galveston Drydock Co. (C. C. A. 5th) 13 F.(2d) 607, 612 (certiorari denied 273 U. S. 725, 47 S. Ct. 237, 71 L. Ed. 860); Astoria Marine Iron Works v. Fleet Corporation (D. C. Oregon) 295 F. 415; Tanner-Gross Co. v. Elwell (D. C. S. D. N. Y.) 2 F.(2d) 396; and United States v. Skinner & Eddy Corp. (D. C.) 5 F.(2d) 708.

I therefore conclude that, from the allegations of the bill and the proofs taken by the master, the Fleet Corporation was acting as agent of the United States in behalf of the United States, under the statutory powers granted to the President and by him delegated to the Fleet Corporation, to procure the construction of ships for the United States. The Fleet Corporation is therefore not liable. The defendant's exceptions to the fourth separate defense are sustained, and a decree may be submitted dismissing plaintiff's bill. Ordered accordingly.