## RUSSELL WHEEL & FOUNDRY CO. v. UNITED STATES.

Circuit Court of Appeals. Sixth Circuit. April 8, 1929.

No. 5096.

Raymond K. Dykema, of Detroit, Mich. (Dykema & Wheat, of Detroit, Mich., on the brief), for appellant.

C. Frederick Stanton, of Detroit, Mich., and I. V. McPherson, of Washington, D. C. (Delos G. Smith, U. S. Atty., of Detroit, Mich., and Chauncey G. Parker, Gen. Counsel, U. S. Shipping Board, of Washington, D. C., on the brief), for the United States.

Before HICKS, MACK, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge. On July 10, 1918, the United States Shipping Board Emergency Fleet Corporation, through its agent, American International Shipbuilding Corporation, placed an order with plaintiff

in error, herein called defendant, for the manufacture and delivery at Hog Island, Pa., of 120 ship propellers. Defendant accepted this order on July 15th. Twenty-two of these propellers were delivered by November 5, 1918, and upon inspection were rejected. Defendant acquiesced in their rejection and replaced the propellers. Upon completion of the order defendant was paid, not only for the 120 propellers accepted, but was also by mistake paid $37,000.48 for the 22 rejected ones. Upon demand it declined to repay this money; hence this suit.

At the close of the evidence both parties moved for a directed verdict. The plaintiff's motion was sustained. Defendant brought writ of error. It does not claim this money as a substantive right, but it challenges the authority of the United States as party plaintiff to recover it. It urges that the Fleet Corporation, in making the order for the propellers, was not acting for plaintiff, United States, but in its own private corporate capacity, and that it is therefore the real party in interest, rather than plaintiff. We cannot agree with this insistence. The point must be determined by a consideration of the nature of the case as reflected by the record. United States v. Beebe, 127 U. S. 338, 344, 8 S. Ct. 1083, 32 L. Ed. 124; Ex parte Ayers, 123 U. S. 492, 493, 8 S. Ct. 164, 31 L. Ed. 225.

■ The United States Shipping Board, a governmental body, was organized under Act Cong. Sept. 7, 1916, c. 451 (U. S. C. tit. 46, § 804 [46 USCA § 804]). It was a war necessity. For the same reason the Shipping Board was authorized to and did organize the United States Shipping Board Emergency Fleet Corporation under the authority of section 810 of said act. As provided by this act the Fleet Corporation was organized under the laws of the District of Columbia, the government owning all of its capital stock of $50,000,000. It has been consistently held that the Fleet Corporation, although an instrumentality of the government, was a separate entity, having the right to sue and be sued by its corporate name, and to transact business as other private corporations. U. S. v. Strang, 254 U. S. 491, 493, 41 S. Ct. 165, 65 L. Ed. 368, 369; Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corp., 258 U. S. 549, 567, 42 S. Ct. 386, 66 L. Ed. 762, 767; U. S. ex rel. Skinner & Eddy Corporation v. McCarl, 275 U. S. 1, 3, 48 S. Ct. 12, 72 L. Ed. 131, 133; United States Shipping Board Emergency Fleet Corp. v. Western Union

Tel. Co., 275 U. S. 415, 416, 48 S. Ct. 198, 72 L. Ed. 345, 346; The Lake Monroe, 250 U. S. 246, 39 S. Ct. 460, 63 L. Ed. 963; Providence Engineering Corp. v. Downey Shipbuilding Corp. (C. C. A. 2d) 294 F. 641, 646.

However, the Fleet Corporation had other and further powers than those of a mere private corporation of the District of Columbia, the jurisdiction under which it was organized. The President, by virtue of the Urgency Deficiencies Appropriation Act of June 15, 1917 (40 Stat. at Large 182), from time to time delegated to the Fleet Corporation certain powers and authority vested in him by said act. See Executive Orders of July 11, 1917, and December 3, 1917. Todd Dry Dock & Constr. Corp. v. Sumner Iron Wks. (C. C. A. 9) 289 F. 217, 218; U. S. ex rel. Skinner & Eddy Corp. v. McCarl, supra; U. S. Ship. Bd. Emerg. Fleet Corp. v. W. U. Tel. Co., supra; U. S. v. Brown, 247 N. Y. 211, 218, 160 N. E. 13. Among other such delegated powers was the authority to "place an order with any person for such ships or material as the necessities of the government * * * may require during the period of the war and which are of the nature, kind and quantity usually produced or capable of being produced by such person." To set up governmental agencies out of such character of corporations in times of war was no new thing (U. S. ex rel. Skinner v. McCarl, supra), and it was by virtue of such powers so granted that the Fleet Corporation carried on its tremendous shipbuilding program for the government at Hog Island and elsewhere at a public expense of approximately $3,-000,000,000.

■ It is thus clear that the Fleet Corporation had authority to contract with the defendant for the propellers, either (1) as a private corporation; or (2) as an instrumentality of the government. In the instant case, the District Judge held upon a motion for a directed verdict by both parties that the Fleet Corporation was an agent of the United States and this inference or deduction must stand if supported by substantial evidence. Williams v. Vreeland, 250 U. S. 295, 298, 39 S. Ct. 438, 63 L. Ed. 989, 991, 3 A. L. R. 1038.

Pretermitting other evidential facts found in the record, the outsanding and all sufficient feature is that the money sued for is part of a vast public fund belonging to plaintiff and appropriated by law out of the Treasury to plaintiff's shipbuilding program, and authorized by law to be expended by the

Fleet Corporation as the delegated agency of the President. Emergency Shipping Fund Provision of Urgency Deficiencies Appropriation Act of June 15, 1917, 40 Stat. at Large 182, 183. This money was no less public revenue in the hands of the Fleet Corporation than it was in the Treasury and its disbursement by mistake entitles plaintiff to recover it in its own right. Its receipt and retention by defendant was unauthorized and without consideration. It was the property of the plaintiff unlawfully diverted from its proper use. Defendant is placed in no better light because it received the money from a governmental agency. We are dealing not only with the relationship of principal and agent, but with the abstract principle of property right. The money was plaintiff's property, and it was therefore entitled to sue for it, not only by the common law, but under the express provision of the Michigan Judicature Act (3 Comp. Laws 1915, § 12353), which commands that "every action shall be prosecuted in the name of the real party in interest." Bayne v. U. S., 93 U. S. 642, 643, 23 L. Ed. 997, 998; U. S. v. Barlow, 132 U. S. 271, 281, 10 S. Ct. 77, 33 L. Ed. 351; Marshall & Ilsley Bank v. Mooney, 205 Mich. 513, 517, 171 N. W. 533; County of Wayne v. Reynolds, 126 Mich. 231, 235, 85 N. W. 574 (86 Am. St. Rep. 541); Village of Ft. Edward v. Fish, 156 N. Y. 365, 50 N. E. 973; U. S. v. Brown, 247 N. Y. 211, 218, 160 N. E. 13; Cayuga Co. v. State, 112 Misc. Rep. 517, 183 N. Y. S. 646, 648; Commonwealth v. Field, 84 Va. 26, 31, 3 S. E. 882; Mechem on Agency, vol. 2, pp. 60, 61, § 2089.

The judgment is therefore affirmed.